## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JOLEEN YOUNGERS,
AS PERSONAL REPRESENTATIVE
OF THE WRONGFUL DEATH ESTATE
OF L.K., A DECEASED MINOR CHILD,
AR. K., AND AN. K,

      Plaintiffs**,**

v.                                   No. _____

META PLATFORMS, INC.,
F/K/A FACEBOOK, INC.,
SNAP, INC., BYTEDANCE, INC.,
TIKTOK, INC., SKYLER STANFORD,
SAUL RODARTE, and
ADAM ANAYA,

      Defendants.

## DECLARATION OF ERIC R. BURRIS IN SUPPORT OF
## DEFENDANT META PLATFORMS, INC.'S NOTICE OF REMOVAL

I, Eric R. Burris, hereby declare and state:

1.      I am an attorney duly licensed to practice law before all the courts of the state of New Mexico and the United States District Court for the District of New Mexico.  I am a shareholder in the law firm of Brownstein Hyatt Farber Schreck, LLP, and I am counsel for Defendant Meta Platforms, Inc. ("Meta") in the above-titled action.  I have personal knowledge of the matters stated herein, and if asked to testify thereto, I could and would do so competently.

2.      Attached hereto as **Exhibit A** is a true and correct copy of the Complaint in *Joleen Youngers, et al. v. Meta Platforms, Inc., et al.*, Case No. D-101-CV-2022-01183, First Judicial District, Santa Fe County, which was filed on July 6, 2022, and served on Meta on July 15, 2022.

3.      Attached hereto as **Exhibit B** is a Civil Case Cover Sheet for this action.

4.      Attached hereto as **Exhibit C** is a true and correct copy of the Summons in *Joleen Youngers, et al. v. Meta Platforms, Inc., et al.*, Case No. D-101-CV-2022-01183, First Judicial District, Santa Fe County, which was filed on July 12, 2022, and served on Meta on July 15, 2022.

5.      Attached hereto as **Exhibit D** is a true and correct copy of the Answer to Summons of Defendant Adam Anaya in *Joleen Youngers, et al. v. Meta Platforms, Inc., et al.*, Case No. D-101-CV-2022-01183, First Judicial District, Santa Fe County, which was filed on August 8, 2022, but has not been served on Meta.

6.      Attached hereto as **Exhibit E** is a true and correct copy of the Amended Answer to Summons of Defendant Adam Anaya in *Joleen Youngers, et al. v. Meta Platforms, Inc., et al.*, Case No. D-101-CV-2022-01183, First Judicial District, Santa Fe County, which was filed on August 12, 2022, but has not been served on Meta.

7.      Attached hereto as **Exhibit F** is a true and correct copy of the Judicial District Court Docket Sheet in *Joleen Youngers, et al. v. Meta Platforms, Inc., et al.*, Case No. D-101-CV-2022-01183, First Judicial District, Santa Fe County.

8.      In accordance with 28 U.S.C. § 1446(a), Exhibit A through F constitute copies of "all process, pleadings, and orders served upon" Meta and/or filed in *Joleen Youngers, et al. v. Meta Platforms, Inc., et al.*, Case No. D-101-CV-2022-01183, First Judicial District, Santa Fe County.

9.      Attached hereto as **Exhibit G** is Notice of Consent to Removal for Defendants TikTok Inc. and ByteDance Inc.

10.      Attached hereto as **Exhibit H** is the Consent of Snap Inc. to Removal.

11.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I executed this Declaration on August 15, 2022, in Albuquerque, New Mexico.

_____

Eric R. Burris

24567912

# Exhibit A

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
7/6/2022 5:01 PM
KATHLEEN VIGIL CLERK OF THE COURT
Marina Sisneros

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT

JOLEEN YOUNGERS,
AS PERSONAL REPRESENTATIVE
OF THE WRONGFUL DEATH ESTATE
OF L.K., A DECEASED MINOR CHILD,
AR. K., and AN. K,

       Plaintiffs,

vs.                                                    No.: __D-101-CV-2022-01183____

                                        Case assigned to Mathew, Francis J.

META PLATFORMS, INC.,
F/K/A FACEBOOK, INC.,
SNAP, INC., BYTEDANCE, INC.,
TIKTOK, INC., SKYLER STANFORD,
SAUL RODARTE, and ADAM ANAYA,

       Defendants

## PLAINTIFFS' ORIGINAL COMPLAINT
## FOR WRONGFUL DEATH, LOSS OF CONSORTIUM, AND PUNITIVE DAMAGES

**"[W]e must hold social media platforms accountable for the national experiment they're conducting on our children for profit."**

President Joe Biden, March 1, 2022, State of the Union Address.

COME NOW Plaintiffs Joleen Youngers, as the personal representative of the wrongful death estate of L.K., Ar. K., and An. K., (collectively, "Plaintiffs"), by and through their undersigned counsel, complaining of Meta Platforms, Inc., f/k/a Facebook, Inc., Snap, Inc., ByteDance, Inc., TikTok, Inc., Skyler Stanford, Saul Rodarte, and Adam Anaya, and for their causes of action state:

## INTRODUCTION

1.      This case is about the ruthless business practices of three social media companies: Meta Platforms, Inc. (owner and operator of the social media app Instagram), Snap, Inc. (owner and operator of the social media app Snapchat), and ByteDance, Inc. (owner of TikTok, Inc., which owns and operates the social media app TikTok) (all collectively referred to herein as "the Social Media Defendants"). The unconscionable business model of the Social Media Defendants is to create and sustain addiction to their social media products in millions of minors and then to manipulate and control the behavior of these minors to generate billions of dollars in advertising revenue.

2.      While the nominal policy of the Social Media Defendants is that no one under 13 years of age may create an account, the reality is that for many years the Social Media Defendants have known that children under 13 use their products, have allowed the practice to continue, and have received billions of dollars in revenues directly from the use of their products by children under 13. The reason is simple: some advertisers want to target ads to children under 13 and more accounts by minors means more dollars generated from advertising.  Shamefully, the Social Media Defendants make money by inducing children into social media addiction, a dangerous spiral of compulsive use that is harmful to the mental health and well-being of children. Internally, Meta refers to addictive, compulsive use of its products with the euphemism "problematic use."

3.      The Social Media Defendants hired the brightest minds in the industry to design Instagram, Snapchat, and TikTok to create and sustain addiction in their users, including minors. Using digital psychological tools in their products such as likes, follows, tags, notifications,

and reminders, as well as powerful algorithms, the Social Media Defendants manipulate children to engage in a repetitive and dopamine-driven feedback loop of viewing, watching, sharing, liking, and tagging photographs, videos, and stories. The objective is to enthrall and consume as much of the life of each child as possible. Childrens' developing brains are particularly vulnerable to the digital psychological tools designed into the Social Media Defendants' products. Indeed, the Social Media Defendants manipulate children into exchanging life in the real world for a life of addiction in a digital universe. Why? Because user engagement by children equates to billions of dollars in revenues for the Social Media Defendants.

4.      The consequences of the reprehensible conduct of the Social Media Defendants have been devastating. Between 2011 and 2015, youth psychiatric visits for depression, anxiety, and behavioral challenges increased 28 percent. **Between 2007 and 2018, suicide rates among children ages twelve to sixteen in the U.S. increased 146 percent**, and incidences of serious depression and dissatisfaction with life in this same age group have dramatically risen. All the data points to a simple fact: the Social Media Defendants have created a mental health crisis for children and teenagers across the country.

5.      L.K., a beautiful seventeen-year-old girl from Rio Rancho, New Mexico, died as a direct result of the reprehensible conduct of the Social Media Defendants. L.K. started using Instagram and Snapchat on an iPod touch when she was approximately 9-10 years old. Later, when she was 12 or 13, she obtained a smartphone and her use of social media accelerated because of her near-constant access to the internet. Precisely as the Social Media Defendants intended, L.K. became addicted to their products, oftentimes staying up most of the night using Instagram and Snapchat, and later TikTok. When she was denied access to

Instagram, Snapchat, and later TikTok, L.K. experienced withdrawal symptoms including anger, irritability, anxiety, and sadness. Her dependance on social media increased. She lost interest in other activities. Her schoolwork and relationships suffered. Like many addicts, L.K. deceived others about her use of social media. L.K. sought counseling and medical care for her depression, anxiety, and anger issues, but this ultimately could not save her. She was bullied and blackmailed for sexual favors by at least two teenage boys (named as Defendants Stanford and Rodarte herein), who used Snapchat to torment her. L.K.'s mental health continued spiraling downward through high school because of her addiction to Instagram, Snapchat, and TikTok. She was a different person when she wasn't using social media, but she could never break from her dependence upon social media.

6.     In the first week of July 2020, L.K. was sexually assaulted by Defendant Adam Anaya, who used direct messages on the Social Media Defendants' platforms to set up and complete the assault. L.K. was despondent in the days following the assault.   On July 8, 2020, as a consequence of her behavior, and unaware of her recent trauma, Ar. K and An. K. took away L.K.'s phone, and access to the Social Media Defendants.  That night L.K. committed suicide by shooting herself with a 12-gauge shotgun. The national experiment on the youth of the United States conducted by the Social Media Defendants tragically caused the death of seventeen-year-old L.K.

7.     Plaintiffs bring this case against the Social Media Defendants to hold them accountable for the predictable and known consequences of their experiment on America's youth, and on L.K. and her family specifically. The Social Media Defendants targeted and hooked L.K. on their dangerously defective products and failed to include safeguards in the design of their products that could have saved L.K.'s life. Despite knowing what their products do to

minors, the Social Media Defendants failed to provide any warnings to prevent L.K.'s compulsive, problematic use of their products and to protect L.K.'s mental health and well-being. The products and conduct of the Social Media Defendants, along with the conduct of Defendants Stanford, Rodarte, and Anaya, worked in combination to induce and/or exacerbate the mental illness of L.K. that caused her suicide on July 8, 2020. The Social Media Defendants committed these acts and omissions for one simple and basic reason: to make more money.

8.      Plaintiffs do not seek to hold any of the Social Media Defendants liable as the speaker or publisher of third-party content or for their good faith efforts to limit exposure to third party content; instead, Plaintiffs seek to hold each of the Social Media Defendants responsible for its own independent conduct as designers, programmers, manufacturers, sellers, and/or distributors of their dangerously defective social media products and for their own independent intentional and negligent acts as further alleged herein. As a result, Plaintiffs' claims fall outside any limitations of liability under by Section 230(c) of the Communications Decency Act.

## PARTIES

9.      L.K. was a minor resident of Rio Rancho, Sandoval County, New Mexico. L.K. died by suicide on July 8, 2020, when she was just seventeen years old.

10.      Joleen K. Youngers is an attorney who is a citizen and resident of Santa Fe, New Mexico, and is the court appointed personal representative of the wrongful death estate of L.K.

11.      An. K. is an individual resident of Rio Rancho, Sandoval County, New Mexico. An. K. is L.K.'s mother and is bringing an individual claim for loss of consortium.

**COMPLAINT**                                       **Page 5 of 61**

12.  Ar. K. is an individual resident of Rio Rancho, Sandoval County, New Mexico. Ar. K. is
     L.K.'s father and is bringing an individual claim for loss of consortium.

13.  Plaintiffs will file a Motion to Proceed Using Pseudonym and for Leave to File Complaint
     Under Seal. Additionally, Plaintiffs will immediately make his identity known to Defend-
     ants upon request, subject to agreement that the identities of L.K., An. K., and Ar., K. will
     remain confidential.

14.  Defendant Meta Platforms, Inc., f/k/a Facebook, Inc., is a Delaware corporation with a
     principal place of business located in Menlo Park, California. Meta Platforms, Inc. does
     business in the State of New Mexico but has not been admitted to do business in this state
     and has not designated and does not maintain a statutory agent upon whom service of pro-
     cess may be had. Accordingly, pursuant to NMSA 1978, Section 38-1-6 (1993), service of
     process may be obtained by serving the New Mexico Secretary of State with two copies of
     the process in this cause. The New Mexico Secretary of State will then complete service
     by serving Defendant Meta Platforms, Inc.'s registered agent for service of process in Cal-
     ifornia: CSC Lawyers Incorporating Service at 2710 Gateway Oaks Dr., Suite 150N, Sac-
     ramento, CA 95833.

15.  On October 26, 2021, Facebook, Inc. ("Facebook") changed its name to Meta Platforms,
     Inc. ("Meta"). Meta is successor to all of Facebook's liabilities and is responsible for all of
     Facebook's tortious and unlawful acts and omissions complained of here. All allegations
     herein concerning Meta's acts and omissions are intended as, and should be read as, alle-
     gations concerning Facebook's acts and omissions.

**COMPLAINT**                                                                    **Page 6 of 61**

16.     Defendant Snap, Inc. ("Snap") is a Delaware corporation with a principal place of business located in Venice Beach, California. Snap does business in the state of New Mexico but has not been admitted to do business in this state and has not designated and does not maintain a statutory agent upon whom service of process may be had. Accordingly, pursuant to NMSA 1978, Section 38-1-6 (1993), service of process may be obtained by serving the New Mexico Secretary of State with two copies of the process in this cause. The New Mexico Secretary of State will then complete service by serving Defendant Snap's registered agent for service of process in California: CSC Lawyers Incorporating Service at 2710 Gateway Oaks Dr., Suite 150N, Sacramento, CA 95833.

17.     TikTok, Inc. is a California corporation with a principal place of business at 5800 Bristol Parkway, Culver City, California 90230. TikTok, Inc. does business in the state of New Mexico but has not been admitted to do business in this state and has not designated and does not maintain a statutory agent upon whom service of process may be had. Accordingly, Pursuant to NMSA 1978, Section 38-1-6 (1993), service of process may be obtained by serving the New Mexico Secretary of State with two copies of the process in this cause. The New Mexico Secretary of State will then complete service by serving Defendant Tik-Tok, Inc.'s registered agent for service of process in California: CSC Lawyers Incorporating Service at 2710 Gateway Oaks Dr., Suite 150N, Sacramento, CA 95833.

18.     ByteDance, Inc. is a Delaware corporation with a principal place of business at 250 Bryant Street, Mountain View, California 94041.  ByteDance, Inc. does business in the state of New Mexico but has not been admitted to do business in this state and has not designated and does not maintain a statutory agent upon whom service of process may be had. Ac-

**COMPLAINT**                                                              **Page 7 of 61**

cordingly, Pursuant to NMSA 1978, Section 38-1-6 (1993), service of process may be obtained by serving the New Mexico Secretary of State with two copies of the process in this cause. The New Mexico Secretary of State will then complete service by serving Defendant ByteDance, Inc.'s registered agent for service of process in Delaware: Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

19.   Collectively, TikTok, Inc. and ByteDance, Inc. are referred to herein as the "TikTok Defendants."

20.   Skyler Stanford ("Stanford") is an individual citizen and resident of Sandoval County, New Mexico.

21.   Saul Rodarte ("Rodarte") is an individual citizen and resident of Sandoval County, New Mexico.

22.   Adam Anaya ("Anaya") is an individual citizen and resident of Sandoval Couny, New Mexico.

**JURISDICTION AND VENUE**

23.   Jurisdiction over the parties and the subject matter herein is proper with this Court pursuant to Article VI of the New Mexico Constitution and the New Mexico long-arm statute, NMSA 1978, Section 38-1-16. Defendants Stanford, Rodarte, and Anaya are New Mexico residents subject to the jurisdiction of New Mexico's courts. This Court has specific jurisdiction over Defendants Meta, Snap, and TikTok based on their contacts with and conduct directed toward New Mexico and through the stream of commerce including, upon infor-

mation and belief, their designing, programming, manufacturing, selling, and/or distributing their dangerously defective social media products in and into New Mexico, their provision of service on their social media products in New Mexico, and their income derived from the use and the growth in use of their social media products in New Mexico. Based on this conduct, the Social Media Defendants purposefully directed their activities toward New Mexico and Plaintiffs' claims arise out of this conduct which led to Plaintiffs' injuries and damages set forth herein.

24.     All Defendants caused tortious injury to Plaintiffs identified above by acts or omissions in the State of New Mexico, and/or caused tortious injury in New Mexico by acts or omissions outside of New Mexico.

25.     Defendants Meta, Snap, and TikTok do business in New Mexico, each has purposefully availed itself of the privilege of conducting activities within New Mexico, and each has sufficient minimum contacts with New Mexico such that this Court's exercise of personal jurisdiction over each social media defendant comports with due process.

26.     L.K. downloaded and used the Instagram app in New Mexico. While L.K. used Instagram in New Mexico, Meta was in direct communication with L.K. Meta was sending information to L.K. and receiving information from L.K. while she was in New Mexico. While L.K. used Instagram in New Mexico, Meta tailored L.K.'s interactions on Instagram and controlled her use of Instagram based on information Meta gathered about L.K. while she was in New Mexico and for the express purpose of creating and sustaining L.K.'s addiction to Instagram. Meta targeted ads for L.K. to see based on information it obtained from L.K.

while she used Instagram in New Mexico. Meta owns property in New Mexico and operates a data center in New Mexico.

27.    L.K. downloaded and used the Snapchat app in New Mexico. While L.K. used Snapchat in New Mexico, Snap was in direct communication with L.K. Snap was sending information to L.K. and receiving information from L.K. while she was in New Mexico. While L.K. used Snapchat in New Mexico, Snap tailored L.K.'s interactions on Snapchat and controlled her use of Snapchat based on information Snap gathered about L.K. while she was in New Mexico and for the express purpose of creating and sustaining L.K.'s addiction to Snapchat. Snap targeted ads for L.K. to see based on information it obtained from L.K. while she used Snapchat in New Mexico.

28.    L.K. downloaded and used the TikTok app in New Mexico. While L.K. used TikTok in New Mexico, the TikTok Defendants were in direct communication with L.K. The TikTok Defendants were sending information to L.K. and receiving information from L.K. while she was in New Mexico. While L.K. used TikTok in New Mexico, the TikTok Defendants tailored L.K.'s interactions on TikTok and controlled her use of TikTok based on information the TikTok Defendants gathered about L.K. while she was in New Mexico and for the express purpose of creating and sustaining L.K.'s addiction to TikTok. The TikTok Defendants targeted ads for L.K. to see based on information it obtained from L.K. while she used TikTok in New Mexico.

29.    Venue is proper in Santa Fe County pursuant to N.M.S.A § 38-3-1(A) and (F) because Plaintiff Joleen Youngers resides in Santa Fe County, New Mexico, and because the Social Media Defendants failed to register and designate an agent for service in New Mexico.

**COMPLAINT**                                                                 **Page 10 of 61**

## AMOUNT IN CONTROVERSY

30.     The amount in controversy in this case is in excess of $75,000.

## FACTUAL ALLEGATIONS

### A. The Social Media Defendants' Conduct and Their Dangerously Defective Products Have Created A Worldwide Mental Health Crisis For Children

28.     On December 7, 2021, the United States Surgeon General issued an advisory titled *Protecting Youth Mental Health* which presented data showing an alarming rise in mental health challenges among children. This crisis includes a dramatic increase in the number of suicides, attempted suicides, and inpatient mental health admissions for U.S. Children. For example, between 2007 and 2018, suicide rates among children ages twelve to sixteen in the U.S. increased by 146 percent, and incidences of serious depression and dissatisfaction with life in this same age group have dramatically risen.  According to the Surgeon General's December 7, 2021, advisory, between 2011 and 2015, youth psychiatric visits to emergency departments for depression, anxiety, and behavioral challenges increased by 28 percent.

29.     The explosion of social media platform use by children in the 2000s to present resulted in the emergence of the current mental health crisis among children and teenagers. A Pew Research Center 2018 study revealed that 45 percent of high school students reported using a social media platform daily, while 24 percent reported being online "almost constantly."

30.     The COVID-19 pandemic and the rapid emergence of social media platforms have accelerated this trend. In 2020, a staggering 81 percent of 14-to-22-year-olds reported using social media either "daily" or "almost constantly."

31.     The U.S. Surgeon General's December 7, 2021 advisory[1] warned of the "growing concern about the impact of digital technologies, particularly social media on the mental health and wellbeing of children and young people[]" and that research has shown that social media "can expose children to bullying, contribute to obesity and eating disorders, trade off with sleep, encourage children to negatively compare themselves to others, and lead to depression, anxiety, and self-harm." Furthermore, "several studies have linked time spent on social media to mental health challenges such as anxiety and depression."

32.     A July 2021 report titled *Pathways: How digital design puts children at risk,* published by 5Rights Foundation detailed "alarming and upsetting" results from interviews with digital designers and children which lays bare how the commercial objectives of digital social media companies, like Instagram, Snapchat, and TikTok, translate into design features that negatively impact children.

33.     The *Pathways* report shockingly describes the social media world in which today's children are living as one in which the social media conglomerates, including Meta, Snap, and TikTok, push products which intend to maximize the time spent using the product and shaping the children's behavior. A digital design professional interviewed by 5Rights Foundation put it this way — "companies make their money from attention. Reducing attention will reduce revenue."

34.     As one digital design professional included in the *Pathways* report declared: "[t]here are no safety standards — there is no ethics board in the digital space."

---

[1] https://www.hhs.gov/sites/default/files/surgeon-general-youth-mental-health-advisory.pdf

**COMPLAINT**                                                                      **Page 12 of 61**

35.     From the outset, Meta, Snap, and TikTok have intentionally designed their products to maximize the time children spend on Instagram, Snapchat, and TikTok. Meta, Snap, and TikTok have been well aware of the risks identified in these (and many other) reports for years and know full well that these reports correctly identify serious safety hazards and concerns with their respective products. Nevertheless, Meta, Snap, and TikTok failed to take any significant action to correct any of the risks and safety hazards identified and known to Meta, Snap, and TikTok.

36.     Social media giants like Meta, Snap, and TikTok have seized the opportunity presented by the digital wild west to manipulate and control the behavior of vulnerable children.  Instagram, Snapchat, and TikTok are designed to do one thing: maximize engagement of users (particularly children) with their social media products which in turn increases advertising revenues. Until very recently, Meta, Snap, and TikTok have focused exclusively on their twin goals of user engagement and money making and have thus far shirked all their safety responsibilities (as designers and marketers of their dangerously defective products) for the mental health and well-being of the very children they seek to exploit.

**B.  The Social Media Defendants Are Multibillion Dollar Corporations with Sufficient Resources to Change Their Behavior And Make Their Products Safer.**

   1.  **Meta - Instagram**

37.     Facebook, Inc. purchased Instagram for approximately $1 Billion in 2012. As alleged above, Facebook recently changed its name to Meta Platforms, Inc. (Meta).  Meta's current market capitalization is approximately $562 billion dollars.

**COMPLAINT**                                                                    **Page 13 of 61**

38.     As the successor of Facebook, Meta now owns and operates Instagram and is legally responsible for torts committed and unlawful acts and omissions in the design, marketing, and operation of Instagram.

39.     Instagram is a photo and video sharing social media application that originally enabled users to post and share photos that could be seen by other users who "follow" the user. A user's followers could "like" and post comments on the photos.

40.     An Instagram user's "feed" is comprised of a series of photos and videos posted by accounts that the user follows, along with advertising and other information specifically selected and promoted by Instagram. Meta exerts control over a user's Instagram "feed", including through certain ranking mechanisms, escalation loops, and/or promotion of advertising and information specifically selected and promoted by Meta based on, among other things, its ongoing planning, assessment, and prioritization of the types of information most likely to increase engagement.

41.     Instagram also includes a "discover" feature where a user is shown an endless feed of photos, videos, or other information that is selected by an algorithm designed by Meta based upon the users' demographics and prior activity in the application.

42.     During the last five years, Instagram has added features and promoted the use of short videos known as "Stories" and temporary posts referred to as "Reels." These new features were created to increase user engagement and thereby make more money for Meta.

43.     Based on individualized data collected from their users' social media habits, Instagram independently selects certain information for its users and notifies them of that selection

through in-app notifications, texts and emails. Instagram's notifications to individual users are specifically designed to and do prompt users to open Instagram and view the material selected by Instagram which increases the users screen time and makes Meta more money.

44.    Over time, Instagram has become the most popular photo and video sharing social media product among teenagers and young adults in the U.S. with over 57 million users below the age of eighteen, meaning that 72 percent of America's youth use Instagram.

45.    A central feature of Instagram is its use of algorithms. These algorithms are computer programs which are designed, refined, updated, operated, and implemented by Meta, to gather data on users and manipulate the users' interactions on Instagram to maximize Meta's revenue from each Instagram user. To maximize Meta's revenue, these algorithms are designed to create and sustain user addiction to Instagram with the objective of maximizing user time and user engagement on Instagram. Algorithms are computer code which, among other things, use data Meta has acquired about a user – from the user's browsing history, data tracked about the user from other websites via cookies, and the demographic data shared by the user with the platform – to profile the user and, based on that profile, to recommend profiles for the user to view and "follow" on Instagram. Prior to L.K.'s death, Meta intentionally and deliberately did not make economically and technologically feasible design changes in Instagram to make its product safer and to protect young users from becoming and remaining addicted to Instagram.

   **2.  Snap - Snapchat**

45.    Snap was founded in 2010 as a company named Future Freshman, LLC. Snapchat began operating in 2011. After several name changes, the company settled on its current name in 2016. Snap went public in March of 2017.

46.    Snapchat has experienced and is experiencing explosive growth. Snapchat averaged 319 million Daily Active Users worldwide for the fourth quarter of 2021. This number was an increase of 20.4% from the same quarter in 2020. By the end of the first quarter of 2022, that number was up to 332 billion. In North America, Snapchat had an average of 97 million Daily Active Users during the fourth quarter of 2021 and 98 million Daily Active Users during the first quarter of 2022. The current market capitalization of Snap is approximately 24 billion dollars.

47.    Snapchat claims that there are 6 billion daily video views on the platform, all from mobile devices. For comparison, there are approximately 8 billion daily video views on Facebook and 4 billion on YouTube.

48.    Snapchat was originally a private messaging and photo sharing app on which messages and content were sent to individuals or to groups rather than shared and viewed by all of a user's followers.

49.    One of the central features of Snapchat is that any picture, video, or message sent on the platform – known as "Snaps" – is accessible to the recipient only for a short time before automatically deleting after being viewed. This automatic deleting feature makes Snapchat a favorite platform for underage users seeking to avoid parental supervision and parental control over their social media use.

**COMPLAINT**                                                                                            **Page 16 of 61**

50.     Snap knows that the automatically deleting feature is used by underage users to elude pa-
        rental supervision and control and knows that the feature is used by underage users to en-
        gage in dangerous and harmful activities.  Snap has known this long before the time it
        designed and marketed Snapchat to L.K.  The automatically deleting feature designed into
        Snapchat encourages children to engage in activities that are dangerous and harmful to the
        mental health and well-being of children.

51.     Another central feature of Snapchat is that there are no filters which identify and block
        nudity in Snaps.  At all relevant times herein, Snap could have enhanced the ability to block
        images that show nudity, child pornography, or other lewd or objectionable information,
        but Snap took no steps to do so.  Snapchat is also lax in the policing and enforcement of its
        policies regarding underage users. Snap knows and has known at all relevant times that
        children far too young to use Snapchat safely have created accounts, used Snapchat, and
        become addicted to Snapchat.

52.     These three features together – the "disappearing" nature of Snaps, the lack of filters to
        screen out obscene images, and the ease with which minors can create Snapchat accounts
        - have made Snapchat the preeminent vehicle for underage users to send and receive sex-
        ually explicit photographs. Snap is well aware of this activity and of the resulting harm to
        young users but has not (and does not) make Snapchat safer because the harmful features
        of Snapchat result in increased user engagement, which generates revenue for Snap.

53.     As with Meta, Snap uses algorithms to create and sustain addiction to Snapchat because
        Snap generates more revenue from addicted users.

**COMPLAINT**                                                                          **Page 17 of 61**

54.     Snap knows that many users, including many teenagers who are under 18-years-old, send

        nude and sexually explicit photos and videos on Snapchat. The same algorithms that Snap

        uses to increase ad revenue and user engagement could be used to detect and intercept

        sexually explicit material, and to identify the users who sent it. Snap has intentionally and

        deliberately not made economically and technologically feasible design changes in Snap-

        chat to make its product safer and to protect young users from becoming and remaining

        addicted to Snapchat.

55.     As is the case with Instagram, virtually all revenues generated by Snapchat are from ad-

        vertising.

### 3.   The TikTok Defendants - TikTok

56.     TikTok is a video sharing social media app and product which allows and encourages users

        to create, share, and view short video clips.  The current estimated value of TikTok is be-

        tween $50 and $75 billion dollars.

57.     The TikTok app has become "one of the world's fastest-growing social media platforms:

        and a "global phenomenon" with a massive American audience.  In November 2019, the

        *Washington Post* reported that the TikTok app had been downloaded more than 1.3 billion

        times worldwide and more than 120 million times in the Unites States.  However, by April

        2020, *TechCrunch* reported that the TikTok app's worldwide downloads already had sur-

        passed 2 billion, and that in "the quarter that ended on March 31, TikTok was downloaded

        315 million times — the highest number of downloads for any app in a quarter."

58.     In January 2020, *Barron's* reported on revenue generated by the TikTok app: "The wildly popular short-video service generated $176.9 million in revenue in 2019 — 71% of the total $247.6 million in revenue the app has ever generated, according to new data from the app-tracking firm SensorTower.  In the fourth quarter alone, TikTok had revenue of $88.5 million, up two times from the third quarter and up five times year over year, most of that from advertising and in-app purchases, SensorTower reports.  China accounted for about 69% of the company's 2019 revenue, according to the firm, with the U.S. revenues accounting for 20%.

59.     In 2021, the TikTok Defendants reported that TikTok had 1 billion active global users, and revenues of $4.6 billion.

60.     Alarmingly, estimated age demographics show that a staggering 28 percent of TikTok's users are under the age of 18.

61.     The TikTok Defendants prey upon vulnerable users, such as children, who are thrust into a never-ending dopamine feedback loop which creates addiction and encourages children to engage in the dangerous behavior of remaining on TikTok for as many hours as possible each day.  The TikTok Defendants have intentionally and deliberately not made economically and technologically feasible design changes in TikTok to make it safer and to protect young users from becoming and remaining addicted to TikTok.

62.     As is the case with Instagram and Snapchat, virtually all revenues generated by TikTok are from advertising.

**C.  The Social Media Defendants Designed Their Dangerously Defective Products to Create and Sustain Addiction and to Manipulate Human Behavior.**

**COMPLAINT**                                                                                               **Page 19 of 61**

68.     The Social Media Defendants make money by selling advertisements to be displayed on their platforms.  Advertising sales increase when more people spend more time on their social media products.  As a result, the Social Media Defendants intentionally designed their products to addict users, especially child users.  The Social Media Defendants sustain their users' addictions by way of a dopamine feedback loop and by continuously adding features and altering their algorithms to manipulate users into further engagement with their products. For the Social Media Defendants, revenues are driven by user engagement, and user engagement is driven by user addiction.

69.     The Social Media Defendants are placing their own profits over the mental and physical health and well-being of their users, including minor children like L.K.  These conscious decisions by the Social Media Defendants were contributing causes of L.K.'s mental illness and of L.K.'s suicide.

70.     The Social Media Defendants increase their revenue by finding unique and increasingly dangerous ways to capture user attention and target advertisements to their users. They receive money from advertisers who pay a premium to target advertisements to specific demographic groups of users in the applications including users in New Mexico under the age of 18.

71.     Each of the Social Media Defendants has a policy allowing anyone over 13-years-old to create an account and use their products. Despite these policies, the Social Media Defendants know, and at all relevant times, have known that their respective products are frequently used by children younger than 13-years-old.

72.    Social media dependence and addiction, and harm from addiction to social media, is especially common and severe in teens and pre-teens.

73.    Medical and brain science has found that certain types of social media use can be and often is addictive to children because children's brains are not fully developed.  The undeveloped portions in a child's brain prevents children from have the impulse control and discipline of an adult.  Consequently, addiction to social media can cause and often does cause significant harm to the mental health of minor children, especially when social media use exceeds three hours per day and/or interferes with sleeping hours.  Thus, it is easier for the Social Media Defendants to create and sustain addiction in children users than in more mature users whose completed brain development and broader life experiences can provide at least a partial defense to the addictive features designed into the Social Media Defendants' products.

74.    While the photos, videos and other information posted on social media can be and often is harmful to young users, the addictive characteristics of social media platforms and the time spent on the platforms themselves causes severe harm to young users regardless of the material viewed. Many young users suffer harm from social media use and addiction even when the young user is not exposed to material which is harmful in its own right.

75.    Thus, addiction to social media, in and of itself, causes significant harm to users, *regardless of the specific content consumed by the user*. The claims in this case against the Social Media Defendants are based on the harm resulting from the addiction to social media products which the Social Media Defendants intentionally create and sustain for the express

**COMPLAINT**                                                                                  **Page 21 of 61**

purpose of increasing revenues. The wrong at issue here is the act of designing and oper-

ating the social media platforms to create and sustain addiction and not the particular con-

tent consumed or sent by the addict.

76.  Social media addiction induces mental illness which often results in and/or is accompanied

by depression, anxiety, eating disorders, body image issues, suicidal ideation, attempted

suicide, and suicide.

77.  On December 7, 2021, the United States Surgeon General issued an advisory: *Protecting*

*Youth Mental Health*. The advisory discussed youth mental health generally, but included

a section specifically discussing social media titled "What Social Media, Video Gaming,

and Other Technology Companies Can Do" in which the Surgeon General observed:

> In these digital public spaces, which [are] privately owned and tend to be run
> for profit, there can be tension between what's best for the technology company
> and what's best for the individual user or for society. Business models are often
> built around maximizing user engagement as opposed to safeguarding users'
> health and ensuring that users engage with one another in safe and healthy ways.
> **This translates to technology companies focusing on maximizing time
> spent, not time well spent.**

> (Emphasis in the original).

78.  As Sen. Richard Blumenthal, D-Conn. said: "In truth, Facebook has taken Big Tobacco's

playbook. It has hidden its own research on addiction and the toxic effects of its products.

It has attempted to deceive the public and us in Congress about what it knows and it has

weaponized childhood vulnerabilities against children themselves," The same statement is

true of all three of the Social Media Defendants.

79.     The Social Media Defendants conduct extensive research into how much and how users use their products. Meta, Snap, and TikTok also conduct extensive research into how users are harmed by the products.

80.     Instagram, Snapchat, and TikTok are designed and operated to be used by minor children and are intentionally marketed to minor children across the United States, including in New Mexico.  The Social Media Defendants are aware that large numbers of children under the age of 13 use their products despite user terms or "community standards" that purport to restrict use to individuals who are 13 and older.

81.     The Social Media Defendants use various design features to create and sustain addiction such as unpredictable and uncertain rewards and incentives, including "likes," "follows," "tags," "notifications," "reminders," and the like.  These design features are particularly dangerous to minors including both pre-teen and teenage users because they play upon the undeveloped brains of children create a dopamine feedback loop designed to create further engagement with the social media platform.

82.     For example, Instagram's "pull to refresh" is based on how slot machines operate. It creates an endless feed, designed to manipulate brain chemistry and to contain no end points which might encourage a user to move to other activities.

83.     Meta knows that Instagram both is addictive and harms the mental health of many users, especially teenage girls. For example, one internal document describes teen girls as having "an addicts' narrative about their use [of Instagram]," while another internal document concedes: "We make body image worse for one in three teen girls."

**COMPLAINT**                                                                                    **Page 23 of 61**

84.    Meta does not warn users of the harms it knows result from addiction to Instagram.

85.    Snap does not warn users of the harms it knows result from addiction to Snapchat.

86.    TikTok does not warn users of the harms it knows result from addiction to TikTok.

87.    Instagram, Snapchat, and TikTok are intentionally designed to be used by minors and are actively marketed to minors across the United States. The Social Media Defendants market their products to minors through their own marketing efforts and design.  The Social Media Defendants also work with and actively encourage advertisers to create ads targeted at and appealing to teens, and even to children under the age of 13. The Social Media Defendants spend millions of dollars researching, analyzing, and experimenting with young children to find ways to make their products more appealing and addictive to these age groups, as these age groups are seen as the key to generating revenue in the future.

88.    The Social Media Defendants are aware that large numbers of children under the age of 18 use their products without parental consent.  The Social Media Defendants design their products in a manner that allows such use by minors without parental consent in order to increase user engagement and thereby make more money.

89.    The Social Media Defendants profit by finding unique and increasingly dangerous ways to addict users, increase user engagement, and target advertisements to their users. The Social Media Defendants receive money from advertisers who pay a premium to target advertisements to specific demographic groups of users in the applications including, and specifically, users in New Mexico under the age of 18.

**D.  L.K.'s Addiction to Instagram, Snapchat, and TikTok Induced Mental Illness in L.K. that Resulted in Her Suicide.**

90.     L.K. was born on August 2, 2002. L.K. started using social media, including Instagram and Snapchat, when she received an iPod touch when she was approximately 9-10 years old.

91.     Not long after receiving her iPod touch, L.K. signed up for and began using Instagram and Snapchat.  Over time, L.K. spent more and more time on Instagram and Snapchat.  Eventually, she became addicted to both products and compulsively used Instagram and Snapchat.  Around the age of twelve, L.K. got a smartphone, and began using her smartphone to access and use Instagram and Snapchat.  Later, during high school when TikTok became increasingly popular among children, L.K. began using TikTok along with Instagram and Snapchat.

92.     L.K. developed a habit of staying up nearly all-night using Instagram, Snapchat, and TikTok.  She did not get enough sleep and her academic performance suffered at school.  An. K. and Ar. K, L.K.'s parents, often took L.K.'s phone away from L.K. so she could get more sleep at night and to try to encourage her to do better in school and/or be more social with family members.  When her phone was taken away, L.K. would initially become angry, irritable, and upset.  L.K.'s addictive and excessive use of Instagram, Snapchat, and TikTok induced L.K. to suffer from serious mental illness.  L.K.'s mental illness progressively worsened, and she developed depression and anxiety as a direct result of her use of Instagram, Snapchat, and TikTok.

93.     During her junior high school and high school years, L.K. suffered from extreme anxiety and depression which lead to self-harm, eating disorders, negative body image, alienation, isolation, and suicidal ideation. L.K.'s mental illness was induced by her Instagram, Snap-

chat, and TikTok use and persisted for the rest of L.K.'s life. L.K.'s mental illness, including depression and anxiety, resulted from her addiction to social media, including Instagram, Snapchat, and TikTok.

94.     L.K.'s mental illness, including depression and anxiety, caused by her social media addiction, left her in a weakened and vulnerable condition.

### E.  Rodarte and Stanford Took Advantage of L.K.'s Mental Illness Caused by Her Addiction to Instagram, Snapchat, and TikTok.

95.     During high school, L.K. met Rodarte, who manipulated and convinced L.K. to send him sexually explicit pictures of herself. In part because of her weakened and vulnerable mental state attributable to her social media dependence, L.K. sent pictures to Rodarte by means of Snaps on Snapchat that she intended to remain private and that she believed would be deleted immediately after being viewed.

96.     Rodarte took screenshots of these Snaps, thereby saving them for his own future use.

97.     Rodarte threatened to disseminate the pictures to others and used these pictures and threats to extort sexual favors from L.K.

98.     Rodarte took advantage of L.K.'s mental illness and weakened state that were induced and proximately caused by her addiction to social media and her resulting conditions.

99.     L.K. met Stanford when she was in high school. Like Rodarte, Stanford manipulated and convinced L.K. to send him sexually explicit pictures of herself. In part because of her weakened and vulnerable mental state attributable to her social media dependence, L.K. sent pictures to Stanford by means of Snaps on Snapchat that she intended to remain private and that she believed would be deleted immediately after being viewed.

**COMPLAINT**                                                     **Page 26 of 61**

100.   Stanford took screenshots of these Snaps, thereby saving them for his own future use.

101.   Stanford threatened to disseminate the pictures to others and used these pictures and threats to extort sexual favors from L.K.

102.   Stanford took advantage of L.K.'s mental illness and weakened state that were induced and proximately caused by her addiction to social media and her resulting conditions.

103.   In the summer of 2020, L.K. was driven to complete despondency by both: (1) her mental illness caused by Meta, Snap, and TikTok and (2) Rodarte's and Stanford's extortion and predation.

104.   In the first week of July 2020, L.K. went to Santa Fe. Before leaving, Anaya contacted one of L.K.'s friends through Instagram and bought alcohol for her and L.K., while knowing they were minors.

105.   Anaya waited until he knew that the girls were intoxicated and then he sexually assaulted L.K. and assaulted one of the other girls.

106.   As a result of her mental illness and depression created by the Social Media Defendants and their products, on July 8, 2020, L.K. committed suicide. L.K.'s suicide was foreseeable to Meta, Snap, TikTok, Rodarte, Stanford, and Anaya.  Suicides by teenage girl users like L.K. resulting from her addiction to social media which they intentionally fostered and cultivated, was and is foreseeable to Meta, Snap, and TikTok. The tortious conduct of Meta, Snap, TikTok, Rodarte, Stanford, and Anaya induced the mental illness in L.K. which resulted in her death.

**COMPLAINT**                                                                    **Page 27 of 61**

**F. Plaintiffs' Claims Against the Social Media Defendants Are Not Subject to Any Enforceable Arbitration Clause and Do Not Implicate Section 230 of the CDA.**

105.   Instagram and TikTok have "Terms of Use," and Snapchat has "Terms of Service" (collectively, the "Terms") which contain arbitration clauses. L.K. died before she reached the age of majority under New Mexico law. As such, the Terms, including any arbitration clauses, were not enforceable against L.K. and are not enforceable against either her wrongful death estate, An. K., or Ar. K.

106.   Plaintiff is suing Meta, Snap, and TikTok in their capacities as the designers, marketers, developers, distributors, and owners of their respective products — Instagram, Snapchat, and TikTok.

107.   None of Plaintiffs' causes of action against Meta, Snap, and TikTok seek to treat Meta, Snap or TikTok as the publisher or speaker of information or content posted by a third party on Instagram, Snapchat, or TikTok.

108.   None of Plaintiffs' causes of action against Meta, Snap, or TikTok seek to fault Meta, Snap, or TikTok for any information or content posted on Instagram, Snapchat, or TikTok by a third party.

109.   The Social Media Defendants could have corrected the product defects alleged herein without altering any information or content posted on or messaged through Instagram, Snapchat, and TikTok. Likewise, Meta, Snap, and TikTok could have acted reasonably under the circumstances alleged herein without altering any information or content posted on or messaged through Instagram, Snapchat, and TikTok.

## CLAIMS AGAINST META

## COUNT I - STRICT LIABILITY

### (Against Meta)

110. Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint as through set forth fully herein.

111. Instagram is a product for purposes of New Mexico product liability law.  Indeed, Meta's updated Terms of Use state that "[w]hile our company name has changed, we are continuing to offer the same products, including Instagram."

112. Instagram poses an unreasonable risk of injuries to its users, especially its teen and pre-teen female users, and is unreasonably dangerous to its intended users because of one or more design defects. Specifically, at all relevant times, Instagram was (and is) defective and unreasonably dangerous, as designed, because Instagram:

    a.  is purposefully designed to create and sustain an addiction to Instagram which is harmful to the mental health and well-being of its known users, including minor children, when it is used compulsively just as Meta intended it to be used;

    b.  is marketed for unsupervised use by minor children when it was (and is) not safe for unsupervised use by minor children because it is designed to create and sustain addiction by minors and harms the mental health and well-being of minors when it is used as intended by Meta;

c.  did not require age verification such as a driver's license or other documentation to ensure that minors could not engage in unsupervised use of Instagram or, at a minimum, to ensure that minors' use of Instagram was specifically approved by the minors' parents and was subject to parental controls in order to limit compulsive use of the product that Meta knew was harmful to the mental health and well-being of children;

d.  did not contain any parental control systems or mechanisms which would allow the parents of minor children to monitor, restrict, and otherwise limit their minor children from addictive use of Instagram that Meta knew was harmful to the mental health and well-being of children;

e.  did not contain restrictions on the amount of time a minor child could use the product in a given day;

f.  did not limit and/or prohibit minor children from using social media during regular homework and sleeping hours such as prohibiting minor children from using Instagram from 7 pm to 7 am;

g.  is purposefully designed with a direct messaging feature (known by Meta to be dangerous to children)  whose default settings allow adult users to direct message children through the Instagram App;

h.  was (and is) designed to target innocent and vulnerable minor children in order to manipulate and control their behaviors and to create and sustain an addiction to Instagram by:

**COMPLAINT**                                                                      **Page 30 of 61**

i.  including in its design reward and incentive systems such as "likes", "follows", "tags", and the like in order to manipulate and control and encourage minor children to engage in the dangerous behavior of remaining on Instagram for as many hours as possible each day;

ii.  including in its design a "pull to refresh" feature creating an endless feed with no end points (to allow minor children to stop using Instagram and engage in other activities) in order to encourage minor children to engage in the dangerous behavior of remaining on Instagram for as many hours as possible each day;

iii.  including in its design a notification system to manipulate minor children by reminding them to use Instagram again and again each day in order to encourage minor children to engage in the dangerous behavior of remaining on Instagram for as many hours as possible each day; and

iv.  including in its design highly sophisticated and complex algorithms whose purpose is to create and sustain user addiction to Instagram and to encourage minor children to engage in the dangerous behavior of remaining on Instagram for as many hours as possible each day by analyzing the addicted user's interaction with Instagram and using those analyses to encourage continuous "problematic use" of Instagram and to predict the addict's future behavior in order to sell more advertising and make more money.

113.  The design defects of Instagram:

**COMPLAINT**                                                      **Page 31 of 61**

    a. caused L.K. to be addicted to Instagram and use it compulsively,

    b. induced L.K.'s mental illness, and

    c. were producing causes of the harm to and the death of L.K.

114. The unreasonably dangerous characteristics of Instagram are and have been known to Meta.

115. In addition to the design defects, Instagram poses an unreasonable risk of injuries to its users and is unreasonably dangerous to its intended users because of Meta's failure to give adequate warnings of the known risks of addiction and foreseeable injuries posed by Instagram use when some or all such risks could be avoided by giving an adequate warning.

116. Meta's failure to warn of known risks of injury posed by use of Instagram by minors induced L.K.'s mental illness and was a producing cause of the harm to and death of L.K.

117. The harm to L.K. of which the product defects were a producing cause includes:

    a. addiction;

    b. loss of sleep;

    c. depression;

    d. anxiety;

    e. mental illness;

    f. body dysmorphic disorder;

    g. self-harm;

**COMPLAINT**                                                     **Page 32 of 61**

h.   physical and mental pain and suffering;

i.   emotional distress; and

j.   suicide.

118.   The design defects of Instagram and Meta's failure to give adequate warnings concerning Instagram create an unreasonable risk of injury to Instagram users, especially teen and pre-teen female users. As such, Instagram is a defective product.

119.   The product defects in Instagram induced L.K.'s mental illness, including depression and anxiety, which resulted in and caused L.K.'s pain and suffering, emotional distress, and suicide.

120.   Meta's defective product and its negligent conduct set forth herein were a cause of Plaintiffs' injuries and damages outlined herein.

## COUNT II - NEGLIGENCE

### (Against Meta)

121.   Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint as through set forth fully herein.

122.   As the designer, owner, and operator of Instagram, Meta owes its users the duty to use ordinary care in designing, testing, operating, and marketing Instagram.

123.   Meta has breached its duty of ordinary care in designing, testing, operating, and marketing Instagram by:

**COMPLAINT**                                                                                   **Page 33 of 61**

a.  designing Instagram to create and sustain user addiction in minors by including in
    its design the defective features alleged in Count I in order to encourage minor
    children to engage in the known dangerous use of Instagram;

b.  failing to consider foreseeable risk of injuries to minor children, specifically addic-
    tion and attendant mental health injuries, resulting from reasonably foreseeable
    uses of Instagram;

c.  allowing minor children under the age of 18 to use Instagram, or alternatively, fail-
    ing to provide for reasonable parental controls over the use of Instagram by their
    minor children;

d.  allowing unlimited use of Instagram by minors, or alternatively, failing to impose
    safe limits on such use;

e.  failing to implement reasonable safeguards to identify users under 18 years of age
    and prevent addiction by such minors;

f.  designing Instagram with a direct messaging feature (known by Meta to be danger-
    ous to children)  whose default settings allow adult users to direct message children
    through the Instagram App;

g.  failing to warn users, including minor children and their parents, about the risks
    attendant to use of Instagram;

h.  failing to instruct users, including minor children and their parents, on how to safely
    use Instagram and other social media platforms by limiting daily use and prohibit-
    ing use during normal homework and sleep hours;

**COMPLAINT**                                                    **Page 34 of 61**

     i.  concealing from users, including minors and their parents, known risks attendant to use of Instagram.

     j.  Meta's failure to use ordinary care as pleaded above constitutes negligence.

124.  Meta's negligence:

     a.  caused L.K. to be addicted to Instagram and to use it compulsively,

     b.  induced L.K.'s mental illness, and

     c.  was a proximate cause of the harm to and the death of L.K.

125.  The harm to L.K. of which Meta's negligence were a proximate cause includes:

     a.  addiction;

     b.  loss of sleep;

     c.  depression;

     d.  anxiety;

     e.  mental illness;

     f.  body dysmorphic order;

     g.  self-harm;

     h.  physical and mental pain and suffering;

     i.  emotional distress; and

     j.   suicide.

126.    Meta's negligence induced L.K.'s mental illness, including depression and anxiety, which

resulted in and caused L.K.'s pain and suffering, emotional distress, and suicide.

127.    Meta's defective product and its negligent conduct set forth herein were a cause of Plain-

tiffs' injuries and damages outlined herein.

### COUNT III - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against Meta)

128.    Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint

as through set forth fully herein.

129.    Meta intentionally designed and operated Instagram to create and sustain addiction and to

facilitate known harmful use of Instagram by underage users.

130.    Meta intentionally created and sustained addiction to Instagram to advance its objective of

increasing advertising revenues.

131.    Meta failed to warn users, minor children using Instagram and their parents, of known risks

posed by Instagram use.

132.    Meta intentionally made material misrepresentations concerning the risk of harm posed by

Instagram use and failed to disclose known facts and information concerning such risks of

harm.

133.    Meta is guilty of intentionally inflicting emotional distress on L.K. because:

     a.   Meta's conduct was extreme and outrageous;

    b.   Meta acted intentionally to cause severe emotional distress in minor children using Instagram such as L.K. or, alternatively, Meta's conduct was reckless because Meta acted intentionally with utter indifference to or conscious disregard for the rights and safety of minor children using Instagram such as L.K.; and

    c.   as a result of Meta's conduct, L.K. experienced severe emotional distress.

134.    The conduct of Meta in designing and operating Instagram to create and sustain addiction by L.K. was and is extreme and outrageous because it goes beyond the bounds of common decency.

135.    The conduct of Meta in misrepresenting the risk of harm posed by use of Instagram and failing to disclose known facts and information concerning such risks of harm was and is extreme and outrageous because it goes beyond the bounds of common decency.

136.    L.K.'s emotional distress caused by Meta was severe because it was of such intensity and duration that no ordinary person would be expected to tolerate it.

137.    Meta engaged in such extreme and outrageous conduct either intentionally to cause severe emotional distress in its users or recklessly with utter indifference to or conscious disregard for the safety of Instagram users.

138.    Meta's extreme and outrageous conduct induced L.K.'s mental illness, including depression and anxiety, and was a proximate cause of L.K.'s pain and suffering, mental anguish, and suicide.

## CLAIMS FOR RELIEF AGAINST SNAP

## COUNT IV - STRICT LIABILITY

**COMPLAINT**                                                  **Page 37 of 61**

**(Against Snap)**

139.    Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint as through set forth fully herein.

140.    Snapchat is a product for purposes of New Mexico product liability law.  Snap marketed, sold, and distributed its Snapchat product to L.K. in New Mexico, and L.K. used the Snapchat product as intended by Snap in New Mexico.

141.    Snapchat poses an unreasonable risk of injuries to its users, especially its teen and pre-teen female users, and is unreasonably dangerous to its intended users because of one or more design defects. Specifically, at all relevant times, Snapchat was (and is) defective and unreasonably dangerous, as designed, because Snapchat:

   a.    is purposefully designed to create and sustain an addiction to Snapchat which is harmful to the mental health and well-being of minors when used in the compulsive way that Snap intended its product to be used;

   b.    is marketed for unsupervised use by minor children when it was (and is) not safe for unsupervised use by minor children because its addictive design results in compulsive and uncontrolled use by minors which harms the mental health and well-being of minors;

   c.    did not require age verification such as a driver's license or other documentation to ensure that minors could not engage in unsupervised use of Snapchat or, at a minimum, to ensure that minors' use of Snapchat was specifically approved by the minors' parents and was subject to parental controls;

**COMPLAINT**                                                            **Page 38 of 61**

d.   did not contain any parental control systems or mechanisms which would allow the parents of minor children to monitor, restrict, and otherwise limit their minor children from addictive use of Snapchat;

e.   did not contain restrictions on the amount of time a minor child could use the product in a given day in order to prevent compulsive use of the product that Snap knew was harmful to the mental health and well-being of children;

f.   did not limit and/or prohibit minor children from using snapchat during regular homework and sleeping hours such as prohibiting minor children from using Instagram from 7 pm to 7 am;

g.   is purposefully designed with a direct messaging feature (known to be dangerous to children)  whose default settings allow adult users to direct message children through the Snapchat App;

h.   was (and is) purposefully designed so that snaps disappear after being viewed by a user in order to encourage minor children to engage in dangerous activities and behaviors which foreseeably lead to sexual exploitation and sexual assaults of vulnerable minor children;

i.   was (and is) purposefully designed so that snaps disappear after being viewed by a user in order to encourage minor children to engage in dangerous activities and behaviors which foreseeably lead to sexual exploitation and sexual assaults while also making it virtually impossible for parents of minor children to monitor or control their use of Snapchat;

j. designed to target innocent and vulnerable minor children in order to manipulate and control their behaviors and to create and sustain addiction to Snapchat in each of the following ways:

   i. by including in its design rewards and incentive systems such as "likes," "tags", "follows", and other similar features in order to manipulate and control and encourage minor children to engage in the dangerous behavior of remaining on Snapchat for as many hours as possible each day;

   ii. by including in its design a "pull to refresh" feature creating an endless feed with no end points (to allow minor children to stop using Instagram and engage in other activities) in order to encourage minor children to engage in the dangerous behavior of remaining on Snapchat for as many hours as possible each day;

   iii. by including in its design a notification system to manipulate minor children by reminding them to use Snapchat again and again each day in order to encourage minor children to engage in the dangerous behavior of remaining on Snapchat for as many hours as possible each day; and

   iv. by including in its design highly sophisticated and complex algorithms whose purpose is to create and sustain user addiction to Snapchat and to encourage minor children to engage in the dangerous behavior of remaining on Snapchat for as many hours as possible each day through computerized analysis of the addicted user's interaction with Snapchat and use those anal-

**COMPLAINT**                                                                                  **Page 40 of 61**

yses to further encourage dangerous compulsive use of Snapchat and to pre-
dict the user's future behavior in order to sell more advertising and make
more money.

142.   The design defects of Snapchat:

    a.   caused L.K. to be addicted to Snapchat and to use it compulsively,

    b.   induced L.K.'s mental illness, and

    c.   were producing causes of the harm to and the death of L.K.

143.   The unreasonably dangerous characteristics of Snapchat are and have been known to Snap.

144.   In addition to the design defects, Snapchat poses an unreasonable risk of injuries to its users
and is unreasonably dangerous to its intended users because of Snap's failure to give ade-
quate warnings of the known risk of foreseeable injuries posed by Snapchat use when some
or all such risks could be avoided by giving an adequate warning.

145.   Snap's failure to warn of known risks of injury posed by use of Snapchat by minors induced
L.K.'s mental illness and was a producing cause of the harm to and the death of L.K.

146.   The harm to L.K. of which the product defects were a producing cause includes:

    a.   addiction;

    b.   loss of sleep;

    c.   depression;

    d.   anxiety;

**COMPLAINT**                                                                 **Page 41 of 61**

e.   mental illness;

f.   body dysmorphic disorder;

g.   self harm;

h.   physical and mental pain and suffering;

i.   emotional distress; and

j.   suicide.

147.   The product defects of Snapchat induced L.K.'s mental illness, including depression and anxiety, which resulted in and caused L.K.'s pain and suffering, emotional distress, and suicide.

148.   Snap's defective product and its negligent conduct set forth herein were a cause of Plaintiffs' injuries and damages outlined herein.

## COURT V -NEGLIGENCE

### (Against Snap)

149.   Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint as through set forth fully herein.

150.   As the designer, owner, operator, marketer, and seller of Snapchat, Snap owes its users the duty to use ordinary care in designing, testing, operating, and marketing Instagram.

151.   Snap has breached its duty of ordinary care in designing, testing, operating, and marketing Snapchat by:

**COMPLAINT**                                                                                    **Page 42 of 61**

a.  designing Snapchat to create and sustain addiction in minor children by including in its design the defective features alleged in Count IV in order to encourage minor children to engage in the known dangerous behavior of addictive, compulsive use of Snapchat;

b.  failing to consider foreseeable risk of injuries to minor children, specifically addiction and the attendant mental health injuries, resulting from such reasonably foreseeable uses of Snapchat;

c.  allowing minor children under the age of 18 to use Snapchat, or alternatively, failing to provide for reasonable parental controls over the use of Snapchat by their minors;

d.  allowing unlimited addictive, compulsive use of Snapchat by minor users, or alternatively, failing to impose safe limits on such use;

e.  failing to implement reasonable safeguards to identify users under 13 years of age and prevent addictive, compulsive use by such minors;

f.  designing Snapchat with a direct messaging feature (known to be dangerous to children) whose default settings allow adult users to direct message children through the Snapchat App;

g.  failing to warn users, including minor children and their parents, about the risks attendant to addictive, compulsive use of Snapchat;

    h.   designing Snapchat so that messages, images, and videos automatically delete in order to encourage dangerous behaviors which can foreseeably lead to the sexual exploitation and sexual assault of minor children; and

    i.   concealing from users, including minors and their parents, known risks attendant to addictive, compulsive use of Snapchat.

152.   Snap's failure to use ordinary care as pleaded above constitutes negligence.

153.   Snap's negligence:

    a.   caused L.K. to be addicted to Snapchat and to use it compulsively;

    b.   induced L.K.'s mental illness; and

    c.   was a proximate cause of the harm to and the death of L.K.

154.   The harm to L.K. of which Snap's negligence were a proximate cause includes:

    a.   addiction;

    b.   loss of sleep;

    c.   depression;

    d.   anxiety;

    e.   mental illness;

    f.   body dysmorphic disorder;

    g.   self-harm;

h.   physical and mental pain and suffering;

i.   emotional distress; and

j.   suicide.

155.   Snap's negligence induced L.K.'s mental illness, including depression and anxiety, which resulted in and caused L.K.'s pain and suffering, emotional distress, and suicide.

156.   Snap's defective product and its negligent conduct set forth herein were a cause of Plaintiffs' injuries and damages outlined herein.

## COUNT VI - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against Snap)

157.   Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint as through set forth fully herein.

158.   Snap intentionally designed and operated Snapchat to create and sustain addiction and to facilitate known harmful use of Snapchat by underage users.

159.   Snap intentionally created and sustained addiction to Snapchat to advance its objective of increasing advertising revenues.

160.   Snap failed to warn users, minor children using Snapchat and their parents, of known risks posed by addictive, compulsive use of Snapchat.

161.   Snap intentionally made material misrepresentations concerning the risk of harm posed by Snapchat use and failed to disclose known facts and information concerning such risks of harm.

162.   Snap is guilty of intentionally inflicting emotional distress on L.K. because:

    a.   Snap's conduct was extreme and outrageous;

    b.   Snap acted intentionally to cause severe emotional distress in minor children using Snapchat such as L.K. or, alternatively, Snap's conduct was reckless because Snap acted intentionally with utter indifference to or conscious disregard for the rights and safety of minor children using Instagram such as L.K.; and

    c.   as a result of Snap's conduct, L.K. experienced severe emotional distress.

163.   The conduct of Snap in designing and operating Snapchat to create and sustain addiction and to encourage addictive, compulsive use of its product was and is extreme and outrageous because it goes beyond the bounds of common decency.

164.   The conduct of Snap in misrepresenting the risk of harm posed by Snapchat and failing to disclose known facts and information concerning such risks of harm from addictive, compulsive use of Snapchat was and is extreme and outrageous because it goes beyond the bounds of common decency.

165.   L.K.'s emotional distress caused by Snap was severe because it was of such intensity and duration that no ordinary person would be expected to tolerate it.

166.   Snap engaged in such extreme and outrageous conduct either intentionally to cause severe emotional distress in its users or recklessly with utter indifference to or conscious disregard for the safety of Snapchat users.

167.  Snap's extreme and outrageous conduct induced L.K.'s mental illness, including depres-
      sion and anxiety, and was a proximate cause of L.K.'s pain and suffering, mental anguish,
      and suicide.

## CLAIMS AGAINST THE TIKTOK DEFENDANTS

### COUNT VII - STRICT LIABILITY

#### (Against the TikTok Defendants)

168.  Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint
      as through set forth fully herein.

169.  TikTok is a product for purposes of New Mexico product liability law.  The TikTok Terms
      of service specifically refer to the TikTok "Platform and our related websites, services,
      applications, products, . . ."  Terms of Service at paragraph 2.  The TikTok Defendants
      marketed, sold, and distributed its TikTok product to L.K. in New Mexico, and L.K. used
      the TikTok product in New Mexico as intended by the TikTok Defendants.

170.  TikTok poses an unreasonable risk of injuries to its users, especially its teen and pre-teen
      female users and is unreasonably dangerous to its intended users because of one or more
      design defects. Specifically, at all relevant times, TikTok was (and is) defective and unrea-
      sonably dangerous, as designed, because TikTok:

      a.  is purposefully designed to create and sustain an addiction to TikTok in order to
          encourage the dangerous behavior of compulsive use of TikTok which is harmful
          to the mental health and well-being of its known users, including minor children,
          when used in the compulsive way that TikTok intended its product to be used;

b.  is marketed for unsupervised use by minor children when it was (and is) not safe for unsupervised use by minor children because its addictive design results in compulsive and uncontrolled use by children which harms the mental health and well-being of minor children;

c.  did not require age verification such as a driver's license or other documentation to ensure that minors could not engage in unsupervised use of TikTok or, at a minimum, to ensure that minors' use of TikTok was specifically approved by the minors' parents and was subject to parental controls;

d.  did not contain any parental control systems or mechanisms which would allow the parents of minor children to monitor, restrict, and otherwise limit their minor children from addictive use of TikTok;

e.  did not contain restrictions on the amount of time a minor child could use the product in a given day in order to prevent compulsive use of the product that TikTok knew was harmful to the mental health and well-being of children;

f.  did not limit and/or prohibit minor children from using social media during regular homework and sleeping hours such as prohibiting minor children from using TikTok from 7 pm to 7 am;

g.  was (and is) designed to target innocent and vulnerable minor children in order to manipulate and control their behaviors and to create sustain, and encourage the addictive, compulsive use TikTok by:

**COMPLAINT**                                                                 **Page 48 of 61**

i.  including in its design reward and incentive systems such as "likes" and "hearts" and other similar features in order to manipulate and control the behavior of minor children and to encourage minor children to engage in the dangerous behavior of remaining on TikTok for as many hours as possible each day;

ii.  including in its design a "pull to refresh" feature creating an endless feed with no end points (to allow minor children to stop using TikTok and engage in other activities) in order to encourage minor children to engage in the dangerous behavior of remaining on TikTok for as many hours as possible each day;

iii. including in its design a notification system to manipulate minor children by reminding them to use TikTok again and again each day in order to encourage minor children to engage in the dangerous behavior of remaining on TikTok for as many hours as possible each day; and

iv. including in its design highly sophisticated and complex algorithms whose purpose is to create and sustain the addiction of minor children to TikTok through analysis of the addicted user's interaction with TikTok and to use those analyses to encourage minor children to engage in the dangerous behavior of remaining on TikTok for as many hours as possible each day and to predict the addict's future behavior in order to sell more advertising and make more money.

171.    The design defects of TikTok:

**COMPLAINT**                                                                    **Page 49 of 61**

    a.   caused L.K. to be addicted to TikTok and to use it compulsively,

    b.   induced L.K.'s mental illness, and

    c.   were producing causes of the harm to and the death of L.K.

172.   The unreasonably dangerous characteristics of TikTok are and have been known to the TikTok Defendants.

173.   In addition to the design defects, TikTok poses an unreasonable risk of injuries to its users and is unreasonably dangerous to its intended users because of the TikTok Defendants' failure to give adequate warnings of the known risk of foreseeable injuries posed by TikTok use when some or all such risks could be avoided by giving an adequate warning.

174.   The TikTok Defendants' failure to warn of known risks of injury posed by use of TikTok by minors induced L.K.'s mental illness and was a producing cause of the harm to and the death of L.K.

175.   The harm to L.K. of which the product defects were a producing cause includes:

    a.   addiction;

    b.   loss of sleep;

    c.   depression;

    d.   anxiety;

    e.   mental illness;

    f.   body dysmorphic disorder;

    g.   self-harm;

    h.   physical and mental pain and suffering;

    i.   emotional distress; and

    j.   suicide.

176.    The product defects of TikTok induced L.K.'s mental illness, including depression and anxiety, which resulted in and caused L.K.'s pain and suffering, emotional distress, and suicide.

177.    The TikTok Defendants' defective product and its negligent conduct set forth herein were a cause of Plaintiffs' injuries and damages outlined herein.

## COUNT VIII - NEGLIGENCE

### (Against the TikTok Defendants)

178.    Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint as through set forth fully herein.

179.    As the designer, owner, marketer, and operator of TikTok, the TikTok Defendants owe Tiktok users the duty to use ordinary care in designing, testing, operating, and marketing TikTok.

180.    The TikTok Defendants have breached their duty of ordinary care in designing, testing, operating, and marketing TikTok by:

a.    designing TikTok to create and sustain user addiction in minors by including in its design the defective features alleged in Count VII in order to encourage minors children to engage in the known dangerous use of TikTok;

b.    failing to consider foreseeable risk of injuries to minor children, specifically addiction and compulsive use and the attendant mental health injuries, resulting from such reasonably foreseeable uses of TikTok;

c.    allowing minors to use TikTok, or alternatively, failing to provide for reasonable parental controls over the use of TikTok by their minor children;

d.    allowing addictive, compulsive use of TikTok by minor users, or alternatively, failing to impose safe limits on such use;

e.    failing to implement reasonable safeguards to identify users under 13 years of age and prevent addictive, compulsive use by such minor children;

f.    failing to warn users, including minor children and their parents, about the risks attendant to addictive, compulsive use of TikTok; and

g.    concealing from users, including minor children and their parents, known risks attendant to the addictive, compulsive use of TikTok.

h.    The TikTok Defendants' failure to use ordinary care as pleaded above constitutes negligence.

181.    The TikTok Defendants' negligence:

a.    caused L.K. to be addicted to TikTok and to use it compulsively;

**COMPLAINT**                                                      **Page 52 of 61**

b.      induced L.K.'s mental illness; and

c.      was a proximate cause of the harm to and the death of L.K.

182.    The harm to L.K. of which TikTok's negligence were a proximate cause includes:

a.      addiction;

b.      loss of sleep;

c.      depression;

d.      anxiety;

e.      mental illness;

f.      body dysmorphic disorder;

g.      self-harm;

h.      physical and mental pain and suffering;

i.      emotional distress; and

j.      suicide.

183.    TikTok's negligence induced L.K.'s mental illness, including depression and anxiety, which resulted in and caused L.K.'s pain and suffering, emotional distress, and suicide.

184.    The TikTok Defendants' defective product and its negligent conduct set forth herein were a cause of Plaintiffs' injuries and damages outlined herein.

**COUNT IX - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**COMPLAINT**                                                                    **Page 53 of 61**

**(Against the TikTok Defendants)**

185.   Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint as through set forth fully herein.

186.   The TikTok Defendants intentionally designed and operated TikTok to create and sustain addiction and to facilitate known harmful use of TikTok by underage users.

187.   The TikTok Defendants intentionally created and sustained addiction to TikTok to advance their objective of increasing advertising revenues.

188.   The TikTok Defendants failed to warn users, minor children using TikTok and their parents, of known risks posed by the addictive, compulsive use of TikTok.

189.   The TikTok Defendants intentionally made material misrepresentations concerning the risk of harm posed by TikTok use and failed to disclose known facts and information concerning such risks of harm.

190.   The TikTok Defendants are guilty of intentionally inflicting emotional distress on L.K. because:

   a.      TikTok Defendants' conduct was extreme and outrageous;

   b.      the TikTok Defendants acted intentionally to cause severe emotional distress in minor children using TikTok such as L.K. or, alternatively, the TikTok Defendants' conduct was reckless because the TikTok Defendants acted intentionally with utter indifference to or conscious disregard for the rights and safety of minor children using Instagram such as L.K.; and

**COMPLAINT**                                                                    **Page 54 of 61**

    **c.**      as a result of the TikTok Defendants, conduct, L.K. experienced severe emotional distress.

191.    The conduct of the TikTok Defendants in designing and operating TikTok to create and sustain addiction and to encourage addictive, compulsive use of their product was and is extreme and outrageous because if goes beyond the bounds of common decency.

192.    The conduct of the TikTok Defendants in misrepresenting the risk of harm posed by Tik-Tok and failing to disclose known facts and information concerning such risks of harm from addictive, compulsive use of TikTok was and is extreme and outrageous because if goes beyond the bounds of common decency.

193.    L.K.'s emotional distress caused by the TikTok Defendants was severe because it was of such intensity and duration that no ordinary person would be expected to tolerate it.

194.    The TikTok Defendants engaged in such extreme and outrageous conduct either intentionally to cause severe emotional distress in its users or recklessly with utter indifference to or conscious disregard for the safety of TikTok users.

195.    The TikTok Defendants' extreme and outrageous conduct induced L.K.'s mental illness, including depression and anxiety, and was a proximate cause of L.K.'s pain and suffering, mental anguish, and suicide.

## CLAIMS AGAINST STANFORD, RODARTE, AND ANAYA

### COUNT X – NEGLIGENCE

**(Against Stanford and Rodarte)**

196.   Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint as through set forth fully herein.

197.   Stanford, Rodarte and Anaya owed L.K. the duty to exercise ordinary care to avoid causing harm to others, including L.K.

198.   Stanford and Rodarte breached this duty by manipulating L.K. to send them sexually explicit photographs and using those photographs to attempt to extort sexual acts from L.K.

199.   Anaya breached this duty by using the Social Media Defendants' platforms to communicate with L.K. and take advantage of her weakened condition, created by her addiction to the Social Media Defendants' products, and sexually assault her.

200.   The conduct of Stanford, Rodarte and Anaya constitutes negligence which proximately caused harm to L.K.

201.   The harm to L.K. of which the negligence of Stanford, Rodarte and Anaya were a proximate cause includes:

    a.      depression;

    b.      anxiety;

    c.      mental illness;

    d.      physical and mental pain and suffering;

    e.      emotional distress; and

    f.      suicide.

**COMPLAINT**                                                                                            **Page 56 of 61**

## COUNT XI - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against Stanford, Rodarte, and Anaya)

202.   Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint as through set forth fully herein.

203.   Stanford and Rodarte engaged in extreme and outrageous conduct by manipulating L.K. to send him sexually explicit photographs when she was in a weakened mental condition and then using those photographs to attempt to extort sexual acts from L.K.

204.   Anaya engaged in extreme and outrageous conduct by using the Social Media Defendants' platforms to facilitate him providing alcohol to and sexually assaulting L.K.

205.   Stanford, Rodarte, and Anaya are guilty of intentionally inflicting emotional distress on L.K. because:

   a.     the conduct of Stanford, Rodarte, and Anaya was extreme and outrageous;

   b.     Stanford, Rodarte, and Anaya acted intentionally to cause L.K.'s severe emotional distress. or, alternatively, the conduct of Stanford, Rodarte and Anaya was reckless because they acted intentionally with utter indifference to or conscious disregard for the rights and safety of L.K.; and

   c.     as a result of the conduct of Stanford, Rodarte, and Anaya, L.K. experienced severe emotional distress.

206.   L.K.'s emotional distress caused by Stanford, Rodarte, and Anaya was severe because it was of such intensity and duration that no ordinary person would be expected to tolerate it.

**COMPLAINT**                                                          **Page 57 of 61**

207.    The extreme and outrageous conduct of Stanford, Rodarte, and Anaya induced L.K.'s mental illness, including depression and anxiety, and was a proximate cause of L.K.'s pain and suffering, mental anguish, and suicide.

## COUNT XII - BATTERY

### (Against Anaya)

208.    Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint as through set forth fully herein.

209.    Anaya is guilty of battery of L.K. because he intentionally caused harmful, physical contact with L.K. which resulted in damages to L.K.

210.    Anaya's battery of L.K. induced L.K.'s mental illness, including depression and anxiety, and was a proximate cause of L.K.'s pain and suffering, mental anguish, and suicide.

## CLAIMS AGAINST ALL DEFENDANTS

### COUNT XIII – WRONGFUL DEATH

### (Against all Defendants)

211.    Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint as through set forth fully herein.

212.    The tortious and wrongful acts and omissions of all Defendants resulted in the death of L.K. as pleaded above. Accordingly, all Defendants are liable to L.K.'s wrongful death estate under NMSA §§ 41-2-1 and 41-2-3.

### COUNT XIV – LOSS OF CONSORTIUM

### (Against all Defendants)

**COMPLAINT**                                                                  **Page 58 of 61**

213.   Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint as through set forth fully herein.

214.   An. K. and Ar. K. are L.K.'s parents. L.K.'s suffering and wrongful death has caused An. K., and Ar. K. to suffer severe emotional distress due to the loss of society and companionship they enjoyed with L.K.

## DAMAGES CLAIMED FROM ALL DEFENDANTS

## COMPENSATORY DAMAMGES

### (Claimed from all Defendants)

215.   Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint as through set forth fully herein.

216.   Plaintiffs request judgment for all compensable injuries, including, without being limited to, the following:

a.     L.K.'s physical, mental, and emotional pain and suffering;

b.     L.K.'s enjoyment of life;

c.     L.K.'s medical expenses;

d.     Wrongful death damages as allowed by NMSA § 41-2-3;

e.     Loss of consortium sustained by An. K. and Ar. K.;

f.     Costs;

g.     Interest as allowed by law; and

**COMPLAINT**                                                          **Page 59 of 61**

h.      Any other relief which the Court deems just and proper.

## PUNITIVE DAMAMGES

### (Claimed from all Defendants)

217.    Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint as through set forth fully herein.

218.    In addition to designing, programming, manufacturing, selling, and/or distributing their dangerously defective social media products, giving rise to strict liability and negligence liability, Defendants also acted intentionally, maliciously, willfully, recklessly, and/or with wanton disregard for the safety of others.

219.    Among others, these intentional, malicious, willful, reckless, and/or wanton acts and omissions, either singularly, in combination, or based on the cumulative conduct of employees of Defendants, were a cause of Plaintiffs' injuries and damages. Accordingly, Defendants are liable for punitive damages.

WHEREFORE, Plaintiffs pray for compensatory and punitive damages, for interest on their damages as allowed by law, for costs, and for all just relief.

DATED: July 6, 2022.

Respectfully submitted,

By: */s/ Anthony K. Bruster*

**Anthony Bruster**
New Mexico Bar No. 20283

**BRUSTER PLLC**
680 N. Carroll Ave., Suite 110
Southlake, Texas 76092
Telephone:  (817) 601-9564
Facsimile:  (817) 796-2929
Email: akbruster@brusterpllc.com

Justin R. Kaufman
Rosalind B. Bienvenu
Caren I. Friedman
**DURHAM, PITTARD & SPALDING, LLP**
505 Cerrillos Rd., Suite A209
Santa Fe, New Mexico 87501
Telephone: 505-986-0600
Facsimile: 505-986-0632
Email: jkaufman@dpslawgroup.com
Email: rbienvenu@dpslawgroup.com
Email: cfriedman@dpslawgroup.com

*Attorneys for Plaintiffs*

# Exhibit B

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| (see attachment) | (see attachment) |

| (b) County of Residence of First Listed Plaintiff    Santa Fe County | County of Residence of First Listed Defendant |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>          THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Anthony K. Bruster, 680 N. Carrol Ave., Suite 110, Southlake, TX 76092, (817) 601-9564 | Eric R. Burris and Joseph C. Haupt, 201 Third St. NW, Suite 1800, Albuquerque, NM 87102, (505) 244-0770 |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government Plaintiff
- [ ] 2   U.S. Government Defendant
- [ ] 3   Federal Question *(U.S. Government Not a Party)*
- [x] 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance<br>[ ] 120 Marine<br>[ ] 130 Miller Act<br>[ ] 140 Negotiable Instrument<br>[ ] 150 Recovery of Overpayment & Enforcement of Judgment<br>[ ] 151 Medicare Act<br>[ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>[ ] 153 Recovery of Overpayment of Veteran's Benefits<br>[ ] 160 Stockholders' Suits<br>[ ] 190 Other Contract<br>[ ] 195 Contract Product Liability<br>[ ] 196 Franchise | **PERSONAL INJURY**<br>[ ] 310 Airplane<br>[ ] 315 Airplane Product Liability<br>[ ] 320 Assault, Libel & Slander<br>[ ] 330 Federal Employers' Liability<br>[ ] 340 Marine<br>[ ] 345 Marine Product Liability<br>[ ] 350 Motor Vehicle<br>[ ] 355 Motor Vehicle Product Liability<br>[ ] 360 Other Personal Injury<br>[ ] 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>[x] 365 Personal Injury - Product Liability<br>[ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>[ ] 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>[ ] 370 Other Fraud<br>[ ] 371 Truth in Lending<br>[ ] 380 Other Personal Property Damage<br>[ ] 385 Property Damage Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881<br>[ ] 690 Other<br><br>**LABOR**<br>[ ] 710 Fair Labor Standards Act<br>[ ] 720 Labor/Management Relations<br>[ ] 740 Railway Labor Act<br>[ ] 751 Family and Medical Leave Act<br>[ ] 790 Other Labor Litigation<br>[ ] 791 Employee Retirement Income Security Act | [ ] 422 Appeal 28 USC 158<br>[ ] 423 Withdrawal 28 USC 157<br><br>**INTELLECTUAL PROPERTY RIGHTS**<br>[ ] 820 Copyrights<br>[ ] 830 Patent<br>[ ] 835 Patent - Abbreviated New Drug Application<br>[ ] 840 Trademark<br>[ ] 880 Defend Trade Secrets Act of 2016<br><br>**SOCIAL SECURITY**<br>[ ] 861 HIA (1395ff)<br>[ ] 862 Black Lung (923)<br>[ ] 863 DIWC/DIWW (405(g))<br>[ ] 864 SSID Title XVI<br>[ ] 865 RSI (405(g)) | [ ] 375 False Claims Act<br>[ ] 376 Qui Tam (31 USC 3729(a))<br>[ ] 400 State Reapportionment<br>[ ] 410 Antitrust<br>[ ] 430 Banks and Banking<br>[ ] 450 Commerce<br>[ ] 460 Deportation<br>[ ] 470 Racketeer Influenced and Corrupt Organizations<br>[ ] 480 Consumer Credit (15 USC 1681 or 1692)<br>[ ] 485 Telephone Consumer Protection Act<br>[ ] 490 Cable/Sat TV<br>[ ] 850 Securities/Commodities/ Exchange<br>[ ] 890 Other Statutory Actions<br>[ ] 891 Agricultural Acts<br>[ ] 893 Environmental Matters<br>[ ] 895 Freedom of Information Act<br>[ ] 896 Arbitration<br>[ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>[ ] 950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>[ ] 210 Land Condemnation<br>[ ] 220 Foreclosure<br>[ ] 230 Rent Lease & Ejectment<br>[ ] 240 Torts to Land<br>[ ] 245 Tort Product Liability<br>[ ] 290 All Other Real Property | **CIVIL RIGHTS**<br>[ ] 440 Other Civil Rights<br>[ ] 441 Voting<br>[ ] 442 Employment<br>[ ] 443 Housing/ Accommodations<br>[ ] 445 Amer. w/Disabilities - Employment<br>[ ] 446 Amer. w/Disabilities - Other<br>[ ] 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>[ ] 463 Alien Detainee<br>[ ] 510 Motions to Vacate Sentence<br>[ ] 530 General<br>[ ] 535 Death Penalty<br>**Other:**<br>[ ] 540 Mandamus & Other<br>[ ] 550 Civil Rights<br>[ ] 555 Prison Condition<br>[ ] 560 Civil Detainee - Conditions of Confinement | **IMMIGRATION**<br>[ ] 462 Naturalization Application<br>[ ] 465 Other Immigration Actions | **FEDERAL TAX SUITS**<br>[ ] 870 Taxes (U.S. Plaintiff or Defendant)<br>[ ] 871 IRS—Third Party 26 USC 7609 | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1 Original Proceeding
- [x] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1332

Brief description of cause:
Products liability, negligence, intentional infliction of emotional distress, wrongful death, loss of consortium

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** More than $75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| Aug 15, 2022 | /s/ Eric R. Burris |

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# ATTACHMENT

**Parties**:

*Plaintiffs*:  Joleen Youngers, as personal representative of the wrongful death estate of L.K., a deceased minor child, Ar. K., and An. K

*Defendants*:  Meta Platforms, Inc., f/k/a Facebook, Inc., Snap, Inc., ByteDance, Inc., TikTok, Inc., Skyler Stanford, Saul Rodarte, and Adam Anaya

# Exhibit C

RETURN

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
7/18/2022 4:15 PM
KATHLEEN VIGIL CLERK OF THE COURT
Marina Sisneros

# RETURN OF SUMMONS

| | |
|---|---|
| District Court: First Judicial District Court Santa Fe County, New Mexico<br>Court Address: 225 Montezuma Ave. Santa Fe, NM 87501<br>Court Telephone Number.: 505-455-8155 | Case Number: D-101-CV-2022-01183<br><br>Judge: Francis J. Mathew |
| Plaintiff(s): JOLEEN YOUNGERS, AS PERSONAL REPRESENTATIVE OF THE WRONGFUL DEATH ESTATE OF L.K., A DECEASED MINOR CHILD, AR. K. and AN. K.,<br>v.<br>Defendant(s): META PLATFORMS, INC., f/k/a FACEBOOK, INC., SNAP, INC., BYTEDANCE, INC., TIKTOK, INC, SKYLER STANFORD, SAUL RODARTE, and ADAM ANAYA | Defendant Name: Meta Platforms, Inc. f/k/a Facebook, Inc., by and through the New Mexico Secretary of State<br><br>Address:<br>c/o New Mexico Secretary of State<br>325 Don Gaspar, Suite 300<br>Santa Fe, NM 87501<br><br>Name: Meta Platforms, Inc. f/k/a Facebook, Inc., c/o Registered Agent, CSC Lawyers Incorporating Service 2710 Gateway Oaks Dr., Suite 150N, Sacramento, CA 95833<br><br>Constituting Service Upon: Meta Platforms, Inc. f/k/a Facebook, Inc., pursuant to N.M.S.A. § 38-1-6. |

## TO THE ABOVE NAMED DEFENDANT: Take notice that

1. A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.

2. You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

3. You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4. If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5. You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.

6. If you need an interpreter, you must ask for one in writing.

7.    You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6227; or 1-505-797-6066.

Dated at _____Santa Fe_____, New Mexico, this ___12th___ day of ___July___, 20_22_.

KATHLEEN VIGIL

CLERK OF COURT

By: _marina Sisneros_

Deputy

/s/ *Anthony Bruster*
Attorney for Plaintiff

Anthony K. Bruster
New Mexico Bar No. 20283
**BRUSTER, PLLC**
680 N. Carroll Ave., Suite 110
Southlake, Texas 76092
Telephone:  (817) 601-9564
Facsimile:  (817) 796-2929
akbruster@brusterpllc.com

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 NMRA OF THE NEW MEXICO RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT

JOLEEN YOUNGERS, AS PERSONAL
REPRESENTATIVE OF THE
WRONGFUL DEATH ESTATE
OF L.K., A DECEASED MINOR
CHILD,
AR. K., and AN. K,

       Plaintiffs,

vs.

No.: D-101-CV-2022-01183

META PLATFORMS, INC.,
F/K/A FACEBOOK, INC.,
SNAP, INC., BYTEDANCE, INC.,
TIKTOK, INC., SKYLER STANFORD,
SAUL RODARTE, and ADAM ANAYA,

      Defendants

**RETURN[1]**

STATE OF NEW MEXICO      )
                              )
COUNTY OF _Santa Fe_     )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in **_Santa Fe_** county on the **_15 th_** day of **_July_**, **_2022_**, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

(*check one box and fill in appropriate blanks*)

[ ]    to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

[ ]    to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]     to _____, a person over fifteen (15) years of age and residing at
the usual place of abode of defendant _____, (*used when the defendant is not
presently at place of abode*) and by mailing by first class mail to the defendant at
_____ (*insert defendant's last known mailing address*) a copy of the summons
and complaint.

[ ]     to _____, the person apparently in charge at the actual place of
business or employment of the defendant and by mailing by first class mail to the defendant at
_____ (*insert defendant's business address*) and by mailing the summons
and complaint by first class mail to the defendant at _____ (*insert defendant's
last known mailing address*).

[ ]     to **New Mexico Secretary of state**, an agent authorized to receive service of process for
defendant **Meta Platforms, Inc.** .

[ ]     to _____, [parent] [guardian] [custodian] [conservator] [guardian ad
litem] of defendant _____ (*used when defendant is a minor or an
incompetent person*).

[ ]     to _____ (*name of person*), _____,
(*title of person authorized to receive service. Use this alternative when the defendant is a
corporation or an association subject to a suit under a common name, a land grant board of
trustees, the State of New Mexico or any political subdivision*).

Fees:   **$45 + tax**
        _____

        *Signature of person making service*

        **A/W Legal Document Services**
        Title (*if any*)

Subscribed and sworn to before me this **15th** day of **July**, **2022** .[2]

_____
~~Judge~~, notary or other officer
authorized to administer oaths
**Notary**
Official title

> STATE OF NEW MEXICO
> NOTARY PUBLIC
> MARGERY R. FINN
> COMMISSION # 1041616
> COMMISSION EXPIRES 04/22/2026

### USE NOTE

1.     Unless otherwise ordered by the court, this return is not to be filed with the court
prior to service of the summons and complaint on the defendant.

2.     If service is made by the sheriff or a deputy sheriff of a New Mexico county, the
signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007; by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013; as amended by Supreme Court Order No. 13-8300-022, effective for all cases pending or filed on or after December 31, 2013; as amended by Supreme Court Order No. 14-8300-017, effective for all cases pending or filed on or after December 31, 2014.]

# Exhibit D



STATE OF NEW MEXICO
COUNTY OF ___Santa Fe___
FIRST JUDICIAL DISTRICT COURT

FILED
FIRST JUDICIAL
DISTRICT COURT

2022 AUG -8 PM 2: 24

___Joleen Youngers___,
Petitioner/Plaintiff,

vs.                                              Case No.: ___D-101-CV-2022-01183___

___Adam Anaya___,
Respondent/Defendant

**ANSWER TO** ___Summons___

In response to the Complaint/Petition/Motion filed in this case

___Adam Anaya___ appearing Pro Se, states:
(Print Your Name)

1. I admit the allegations contained in Paragraphs (identify paragraphs by number) of the

   Complaint, Petition or Motion:

   ___204, Petition. Distribution of alcohol to a___

   ___Minor___

2. I deny the allegations contained in paragraphs (identify paragraphs by number) of the

   Complaint, Petition or Motion:

   ___208-210   Petition, 204 (Petition) Sexual assault___

3. I have insufficient information, knowledge and/or belief as to the truth of allegations

   contained in Paragraphs (identify paragraphs by number) of the Complaint, Petition or

   Motion and therefore denies the same:

   _____

   _____

XC: SS
XC: JUDGE
XC: BOND
XC: MVD
XC: CRT RP
XC:

This packet is for suggested use only.  Please seek the advice of an attorney as to your rights and obligations under
the law.

4. State any other facts that you believe are important to this case:

All parties gave Consent

WHEREFORE, I request the Court to:

Award any additional and further relief that the Court may deem appropriate.

Respectfully Submitted,

_____
Signature

Adam Anaya
Printed Name

4457 Golden eagle loop NE
Address

Rio Rancho, NM, 87144
City, State, Zip Code

505-235-2991
Telephone

anayaa07@Gmail.com
E-mail Address

Certificate of Service

I hereby certify that on _____, a true and complete copy of the
document was mailed, hand-delivered or faxed to the other party (**OR**, if the other party has an
attorney, to the other party's attorney):

_____
Signature

This packet is for suggested use only. Please seek the advice of an attorney as to your rights and obligations under the law.

# Exhibit E

STATE OF NEW MEXICO
COUNTY OF ___Santa Fe___
FIRST JUDICIAL DISTRICT COURT



FILED
FIRST JUDICIAL
DISTRICT COURT

2022 AUG 12 PM 3: 19

___Joleen Youngers___,
Petitioner/Plaintiff,

vs.                                    Case No.: D-101-CV-2022-01183

___Adam Anaya___,
Respondent/Defendant

AMMENDED ANSWER TO ___Summons___

In response to the Complaint/Petition/Motion filed in this case

___Adam Anaya___ appearing Pro Se, states:
(Print Your Name)

1. I admit the allegations contained in Paragraphs (identify paragraphs by number) of the

   Complaint, Petition or Motion:

   _____

   _____

2. I deny the allegations contained in paragraphs (identify paragraphs by number) of the

   Complaint, Petition or Motion:

   _____

   _____

3. I have insufficient information, knowledge and/or belief as to the truth of allegations

   contained in Paragraphs (identify paragraphs by number) of the Complaint, Petition or

   Motion and therefore denies the same:

   ___204, 208-210. I invoke the 5th amendment___

   _____

This packet is for suggested use only. Please seek the advice of an attorney as to your rights and obligations under the law.

XC: Judge

4. State any other facts that you believe are important to this case:

_____

_____

_____

WHEREFORE, I request the Court to:

_____

_____

_____

Award any additional and further relief that the Court may deem appropriate.

Respectfully Submitted,

_____
Signature

_Adam    Anaya_____
Printed Name

_____4457  Golden  Eagle Loop NE
Address

_____Rio  Rancho, NM, 87144_____
City, State, Zip Code

_____505-235-2991_____
Telephone

_____anayaa07@Gmail.Com_____
E-mail Address

## Certificate of Service

I hereby certify that on __August  12th  2022__, a true and complete copy of the document was mailed, hand-delivered or faxed to the other party (**OR**, if the other party has an attorney, to the other party's attorney):

_____
Signature

This packet is for suggested use only.  Please seek the advice of an attorney as to your rights and obligations under the law.

# Exhibit F

D-101-CV-202201183 - Monday, August 15, 2022

# Joleen Youngers, et. al.,

## v.

# Meta Platforms Inc , et. al.

## CASE DETAIL

| CASE # | CURRENT JUDGE | FILING DATE | COURT |
|---|---|---|---|
| D-101-CV-202201183 | Mathew, Francis J. | 07/06/2022 | SANTA FE  District |

## PARTIES TO THIS CASE

| PARTY TYPE | PARTY DESCRIPTION | PARTY # | PARTY NAME |
|---|---|---|---|
| D | Defendant | 1 | META PLATFORMS INC |
| D | Defendant | 2 | SNAP INC |
| D | Defendant | 3 | BYTEDANCE INC |
| D | Defendant | 4 | TIKTOK INC |
| D | Defendant | 5 | STANFORD SKYLER |
| D | Defendant | 6 | RODARTE SAUL |
| D | Defendant | 7 | ANAYA ADAM |
| DC | Decedent | 1 | K L |
| | | ATTORNEY: BRUSTER ANTHONY K. | |
| P | Plaintiff | 1 | YOUNGERS JOLEEN |
| | | ATTORNEY: BRUSTER ANTHONY K. | |
| | | ATTORNEY: KAUFMAN JUSTIN ROSS | |
| | | ATTORNEY: BIENVENU ROSALIND | |
| | | ATTORNEY: FRIEDMAN CAREN ILENE | |
| P | Plaintiff | 2 | K AR |
| | | ATTORNEY: BRUSTER ANTHONY K. | |
| | | ATTORNEY: KAUFMAN JUSTIN ROSS | |
| | | ATTORNEY: BIENVENU ROSALIND | |
| | | ATTORNEY: FRIEDMAN CAREN ILENE | |
| P | Plaintiff | 3 | K AN |
| | | ATTORNEY: BRUSTER ANTHONY K. | |
| | | ATTORNEY: KAUFMAN JUSTIN ROSS | |
| | | ATTORNEY: BIENVENU ROSALIND | |
| | | ATTORNEY: FRIEDMAN CAREN ILENE | |

## CIVIL COMPLAINT DETAIL

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISP | DISP DATE |
|---|---|---|---|---|
| 07/06/2022 | 1 | OPN: COMPLAINT | | |

| COA SEQ # | COA DESCRIPTION |
|---|---|
| 1 | Other |

| PARTY NAME | PARTY TYPE | PARTY # |
|---|---|---|

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISP | DISP DATE |
|---|---|---|---|---|
| 07/06/2022 | 2 | OPN: COMPLAINT | | |

| COA SEQ # | COA DESCRIPTION |
|---|---|
| 1 | Other |

| PARTY NAME | PARTY TYPE | PARTY # |
|---|---|---|

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISP | DISP DATE |
|---|---|---|---|---|
| 07/06/2022 | 3 | OPN: COMPLAINT | | |

| COA SEQ # | COA DESCRIPTION |
|---|---|
| 1 | Other |

| PARTY NAME | PARTY TYPE | PARTY # |
|---|---|---|

D-101-CV-202201183 - Monday, August 15, 2022

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISP | DISP DATE |
|---|---|---|---|---|
| 07/06/2022 | 4 | OPN: COMPLAINT | | |

| COA SEQ # | COA DESCRIPTION |
|---|---|
| 1 | Other |

| PARTY NAME | PARTY TYPE | PARTY # |
|---|---|---|

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISP | DISP DATE |
|---|---|---|---|---|
| 07/06/2022 | 5 | OPN: COMPLAINT | | |

| COA SEQ # | COA DESCRIPTION |
|---|---|
| 1 | Other |

| PARTY NAME | PARTY TYPE | PARTY # |
|---|---|---|

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISP | DISP DATE |
|---|---|---|---|---|
| 07/06/2022 | 6 | OPN: COMPLAINT | | |

| COA SEQ # | COA DESCRIPTION |
|---|---|
| 1 | Other |

| PARTY NAME | PARTY TYPE | PARTY # |
|---|---|---|

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISP | DISP DATE |
|---|---|---|---|---|
| 07/06/2022 | 13 | OPN: COMPLAINT | | |

| COA SEQ # | COA DESCRIPTION |
|---|---|
| 1 | Wrongful Death, Non-Auto |

| PARTY NAME | PARTY TYPE | PARTY # |
|---|---|---|

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISP | DISP DATE |
|---|---|---|---|---|
| 07/06/2022 | 14 | OPN: COMPLAINT | | |

| COA SEQ # | COA DESCRIPTION |
|---|---|
| 1 | Loss of Consortium |

| PARTY NAME | PARTY TYPE | PARTY # |
|---|---|---|

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISP | DISP DATE |
|---|---|---|---|---|
| 07/06/2022 | 7 | OPN: COMPLAINT | | |

| COA SEQ # | COA DESCRIPTION |
|---|---|
| 1 | Other |

| PARTY NAME | PARTY TYPE | PARTY # |
|---|---|---|

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISP | DISP DATE |
|---|---|---|---|---|
| 07/06/2022 | 8 | OPN: COMPLAINT | | |

| COA SEQ # | COA DESCRIPTION |
|---|---|
| 1 | Other |

| PARTY NAME | PARTY TYPE | PARTY # |
|---|---|---|

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISP | DISP DATE |
|---|---|---|---|---|
| 07/06/2022 | 9 | OPN: COMPLAINT | | |

| COA SEQ # | COA DESCRIPTION |
|---|---|
| 1 | Other |

| PARTY NAME | PARTY TYPE | PARTY # |
|---|---|---|

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISP | DISP DATE |
|---|---|---|---|---|
| 07/06/2022 | 10 | OPN: COMPLAINT | | |

D-101-CV-202201183 - Monday, August 15, 2022

| COA SEQ # | COA DESCRIPTION |
|---|---|
| 1 | Other |

| PARTY NAME | PARTY TYPE | PARTY # |
|---|---|---|

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISP | DISP DATE |
|---|---|---|---|---|
| 07/06/2022 | 11 | OPN: COMPLAINT | | |

| COA SEQ # | COA DESCRIPTION |
|---|---|
| 1 | Other |

| PARTY NAME | PARTY TYPE | PARTY # |
|---|---|---|

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISP | DISP DATE |
|---|---|---|---|---|
| 07/06/2022 | 12 | OPN: COMPLAINT | | |

| COA SEQ # | COA DESCRIPTION |
|---|---|
| 1 | Other |

| PARTY NAME | PARTY TYPE | PARTY # |
|---|---|---|

## REGISTER OF ACTIONS ACTIVITY

| EVENT DATE | EVENT DESCRIPTION | EVENT RESULT | PARTY TYPE | PARTY # | AMOUNT |
|---|---|---|---|---|---|
| 08/12/2022 | ANSWER | | D | 7 | |
| | Ammended Answer to Summons | | | | |
| 08/08/2022 | PRO SE RESPONSE/REPLY | | D | 7 | |
| | Answer to Summons [xc:Judge] | | | | |
| 07/18/2022 | SUMMONS RETURN | | P | 1 | |
| | Summons Return - Served on TikTok, Inc. thru NM Secretary of State on 07/15/2022 | | | | |
| 07/18/2022 | SUMMONS RETURN | | P | 1 | |
| | Summons Return - Served on Snap, Inc. thru NM Secretary of State on 07/15/2022 | | | | |
| 07/18/2022 | SUMMONS RETURN | | P | 1 | |
| | Summons Return - Served on Meta Platforms, Inc. f/k/a Facebook, Inc. thru NM Secretary of State on 07/15/2022 | | | | |
| 07/18/2022 | SUMMONS RETURN | | P | 1 | |
| | Summons Return - Served on ByteDance, Inc. thru NM Secretary of State on 07/15/2022 | | | | |
| 07/18/2022 | SUMMONS RETURN | | P | 1 | |
| | Summons Return for Skyler Stanford Served on July 14, 2022 | | | | |
| 07/18/2022 | SUMMONS RETURN | | P | 1 | |
| | Summons Return for Saul Rodarte served on July 13, 2022 | | | | |
| 07/18/2022 | SUMMONS RETURN | | P | 1 | |
| | Summons Return for Adam Anaya served on July 13, 2022 | | | | |
| 07/14/2022 | | | | | |
| | Skyler Stanford | | | | |
| 07/12/2022 | JURY DEMAND 12 PERSON | | P | 1 | |
| | Jury Demand | | | | |
| 07/12/2022 | | | | | |
| | Snap Inc | | | | |
| 07/12/2022 | | | | | |
| | TikTok Inc | | | | |
| 07/12/2022 | | | | | |
| | ByteDance Inc | | | | |
| 07/12/2022 | | | | | |
| | Meta Platforms Inc | | | | |
| 07/12/2022 | | | | | |
| | Saul Rodarte | | | | |
| 07/12/2022 | | | | | |
| | Skyler Staford | | | | |
| 07/12/2022 | | | | | |
| | Adam Anaya | | | | |
| 07/08/2022 | MTN: MOTION | | P | 1 | |
| | Motion to Proceed Using Pseudonyms and for Leave to File Complaint Under Seal | | | | |
| 07/08/2022 | MTN: MOTION | | P | 1 | |

---

Page 3

**D-101-CV-202201183 - Monday, August 15, 2022**

| | | | |
|---|---|---|---|
| | Motion for Appointment of Personal Representative to Pursue Wrongful Death | | |
| 07/06/2022 | OPN: COMPLAINT | P | 1 |
| | Plaintiffs' Original Complaint for Wrongful Death, Loss of Consortium, and Punitive Damages | | |

## JUDGE ASSIGNMENT HISTORY

| ASSIGNMENT DATE | JUDGE NAME | SEQ # | ASSIGNMENT EVENT DESCRIPTION |
|---|---|---|---|
| 07/06/2022 | Mathew, Francis J. | 1 | INITIAL ASSIGNMENT |

# Exhibit G

UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

| | |
|---|---|
| JOLEEN YOUNGERS, as personal representative of the wrongful death estate of L.K., a deceased minor child, AR. K., and AN. K, | CASE NO. _____ |
| Plaintiffs, | **DEFENDANTS TIKTOK INC. AND BYTEDANCE INC.'S NOTICE OF CONSENT TO REMOVAL** |
| v. | |
| META PLATFORMS, INC., F/K/A FACEBOOK, INC., SNAP, INC., BYTEDANCE, INC., TIKTOK, INC., SKYLER STANFORD, SAUL RODARTE, and ADAM ANAYA, | ACTION FILED: July 6, 2022 |
| Defendants. | COMPLAINT SERVED: July 15, 2022 |

Defendants TikTok Inc. and ByteDance Inc. consent to removal of the above-captioned case to federal court.


DATED: August 15, 2022

/s/ Meghan D. Stanford
Meghan D. Stanford
**JACKSON LOMAN STANFORD DOWNEY & STEVENS-BLOCK, P.C.**
201 Third St. N.W., Ste. 1500
Albuquerque, NM 87102
Telephone: (505) 767-0577
Facsimile: (505) 242-9944

Albert Giang (*Pro Hac Vice forthcoming*)
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310


*(Counsel continued on next page)*

Geoffrey M. Drake (*Pro Hac Vice forthcoming*)
**KING & SPALDING LLP**
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

David P. Mattern (*Pro Hac Vice forthcoming*)
**KING & SPALDING LLP**
1700 Pennsylvania Avenue NW, Suite 900
Washington, DC 20006
Telephone: (202) 737-0500
Facsimile: (202) 626 3737

*Counsel for TikTok Inc. and ByteDance Inc.*

# Exhibit H

1    JONATHAN H. BLAVIN (CA State Bar No. 230269)
     jonathan.blavin@mto.com
2    MUNGER, TOLLES & OLSON LLP
     560 Mission Street, 27th Floor
3    San Francisco, CA  94105-3089

4    ROSE LEDA EHLER (CA State Bar No. 296523)
     rose.ehler@mto.com
5    MUNGER, TOLLES & OLSON LLP
     350 South Grand Avenue, 50th Floor
6    Los Angeles, California 90071-3426
     Telephone:     (213) 683-9100
7    Facsimile:     (213) 687-3702

8    (*Pro Hac Vice forthcoming*)

9    Attorneys for SNAP INC.

10                          UNITED STATES DISTRICT COURT

11                             DISTRICT OF NEW MEXICO

12

13
     JOLEEN YOUNGERS, as personal          Case No.
14   representative of the wrongful death estate of
     L.K., a deceased minor child, AR. K., and AN.   **CONSENT OF SNAP INC. TO REMOVAL**
15   K., ,
                                            Date Action Filed:     July 6, 2022
16                Plaintiffs,
                                            Complaint Served:     July 18, 2022
17          vs.

18
     META PLATFORMS, INC., formerly known
19   as FACEBOOK, INC.; SNAP, INC.;
     BYTEDANCE, INC., TIKTOK, INC,
20   SKYLER STANFORD, SAUL RODARTE
     and ADAM ANAYA,
21
22                Defendants.

23

24

25

26

27

28

1    Defendant Snap Inc. consents to removal of the above-captioned case to federal court.

2

3    DATED:  August 15, 2022              MUNGER, TOLLES & OLSON LLP

4                                         By:    /s/ Jonathan H. Blavin

5                                                JONATHAN H. BLAVIN

6                                         Attorneys for SNAP INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-1-                                      Case No.